**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

EQUAL VOTE AMERICA CORP., LEWIS Y. LIU      Case No.: 19-cv-00311

Plaintiffs,

**AMENDED COMPLAINT**

    -against-

CONGRESS, NANCY PELOSI, in her official capacity as the
Speaker of the House of the Representatives; KEVIN MCCARTHY,
in his official capacity as the Minority Leader of the House;
MITCH McCONNELL, in his official capacity as the Senate
Majority Leader; and CHARLES (CHUCK) SCHUMER,
in his official capacity as the Senate Minority Leader,

Defendants

----------------------------------------------------------------

        COME NOW Plaintiffs in the above styled action and respectfully show this Honorable Court as follows:

### <u>THE PARTIES</u>

That the first Plaintiff is a Not-for-Profit Corporation with the mission of educating the general public on voting rights, and promoting voter participation in the election process without supporting any particular political party or candidate. In this case, Equal Vote America Corp. represents a group of eligible voters, led by Lewis Y. LIU, who is a registered voter in the state of New York.

This Complaint is filed against all successive classes of Congress since 1911 including the current Congress. The following congressional leaders are listed on ex official basis because they have the power to initiate new legislation and control the legislative process:

1. Nancy Pelosi is the Speaker of the House of the Representatives;

2. Kevin McCarthy is the Minority Leader in the House of the Representatives;

3. Mitch McConnell is the Republican Majority Leader in the Senate; and

4. Charles (Chuck) Schumer is the Democratic Minority Leader in the Senate.

## <u>THE COMPLAINT</u>

1. Based on the existing Apportionment laws and the 2010 Census, Wyoming (WY) is guaranteed one (1) house seat for its population of 563,626, while New York State (NY) gets only 27 house seats for its population of 19,378,561, i.e. 717,707 per house seat. Had NY been allocated one house seat per 563,626, same as WY, NY should have had 34.4 house seats. Therefore, NY residents had been under-represented by at least 7 house seats, or 21%.

2. The significant under-representation at the House of Representatives suffered by NY residents including Plaintiff Liu and other similarly situated eligible voters represented by Equal Vote America (collectively the "Plaintiff") was a direct result of the existing Apportionment Acts of 1911, 1929 and 1941 which capped the number of house seats at 435, and made the apportionment process self-executing after each decennial census.

3. Since then Congress has collectively failed to update the cap and allocation of house seats in accordance with the (1) the founding agreement of bicameral legislature agreed upon by the founding fathers, and (2) the Constitution Article I, § 2 Clauses 1 & 3 which mandate allocation of house seats to be proportional to each state's population.

4. The significant under-representation at the House of Representatives has gravely…

    (1) diminished Plaintiff's right to equal representation at the House of Representatives under Article I, § 2 Clauses 1 & 3;

    (2) diluted Plaintiff's right to vote in presidential elections guaranteed by Article II, § 1;

    (3) demeaned Plaintiff's Citizen Privileges guaranteed by Article IV, § 2;

    (4) debased Plaintiff's Freedom of Speech guaranteed by the First Amendment;

    (5) violated Plaintiff's Due Process guaranteed by the Fifth Amendment;

    (6) infringed Plaintiff's Citizen Privileges, Due Process and Equal Protection rights under the Fourteenth Amendment § 1;

    (7) diluted Plaintiff's right to equal vote and to be counted in whole number under the Fourteenth Amendment § 2.

5. The redress Plaintiff is seeking is for the Court to review and declare the existing apportionment laws governing the current cap and allocation of house seats unconstitutional.

# TABLE OF CONTENTS

**Page**

Parties to the Proceedings ................................................................................................. 1

The Compliant ..................................................................................................................... 2

Table of Contents................................................................................................................ 3

Table of Appendix .............................................................................................................. 3

Table of Authorities............................................................................................................ 4

Jurisdiction........................................................................................................................... 5

Constitutional and Statutory Provisions Involved ........................................................... 5

Statement of Facts............................................................................................................... 7

Congress Has Dishonored the Founding Agreement..................................................... 12

Congress Has Violated Plaintiff's Constitutional Rights ............................................. 14

Plaintiff Has the Standing to Sue .................................................................................... 17

The Court Has the Power and Duty to Redress .............................................................. 19

Congress Has the Power and Duty to Rectify ................................................................ 21

An Arithmetical Solution That Honors the Founding Fathers' Agreement and Criteria ................ 22

Conclusion ........................................................................................................................ 25

# APPENDIX

**Page**

A - State-by-State Under-representation at the House of Representatives per 2010 Census ............ 26

B - State-by-State Under-representation at the House of Representatives per 2000 Census ............ 27

C - State-by-State Under-representation at the House of Representatives per 1990 Census ............ 28

D – The Nearest Integer Proposal for State-by-State Representation at the House of Rep............... 29

E – The Nearest Tenth Digit Proposal for State-by-State Representation at the House of Rep........ 30

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

*Baker v. Carr*, 369 U.S. 186 (1962) ....................................................................................... 18, 20

*Brown v. BoE,* 347 U.S. 483 (1954) ...................................................................................... 17

*Colegrove v. Green,* 328 U.S. 549 (1946) ............................................................................. 20

*Cotting v. Godard*, 183 U.S. 79 (1901) ................................................................................. 20

*Dred Scott v. Sandford,* 60 U.S. 393 (1901)........................................................................... 17

*Federal Election Commission v. Akins,* 524 U.S. 11, 24 (1998) ...................................... 18

*Marbury v. Madison*, 5 U.S. 137 (1803)................................................................................. 20

*Massachusetts v. Environmental Protection Agency (EPA),* 549 U.S. 497 (2007) ........................... 18

*Obergefell v. Hodges*, 576 U.S. ___ (2015) ......................................................................... 17

*Paul v. Davis*, 424 U.S. 693 (1976).......................................................................................... 19

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) ...................................... 12

*Reynolds v. Sims*, 377 U.S. 533 (1964).................................................................................... 18

*Roe v. Wade*, 410 U.S. 113 (1973) .......................................................................................... 17

*Wesberry v. Sanders,* 376 U.S. (1964)................................................................................. *passim*

*U.S. v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 686-88 (1973) .......... 18


**Statutes**                                                                                                     **Page**

28 U.S.C. § 2403(a) ...................................................................................................................... 5


**Constitutional Provisions**

The Fugitive Clause ................................................................................................................... 18

Three-Fifths Clause .............................................................................................................. 16, 18

U.S. Const. Amend. I................................................................................................................*passim*

U.S. Const. Amend. V ..............................................................................................................*passim*

U.S. Const. Amend. XIV ..........................................................................................................*passim*

U.S. Const. Article I, § 1 ............................................................................................................ 21

U.S. Const. Article I, § 2 ........................................................................................................*passim*

U.S. Const. Article I, § 3 ............................................................................................................. 8

U.S. Const. Article I, § 4 ...................................................................................................... 13, 21

U.S. Const. Article II, § 1 ........................................................................................................... 14

U.S. Const. Article III, § 1 ......................................................................................................... 19

U.S. Const. Article III, § 2 ................................................................................................. 19

U.S. Const. Article IV, § 2 ................................................................................................*passim*

U.S. Const. Article IV, § 4 ................................................................................................. 20

U.S. Const. Article VI, Par. 2 ............................................................................................ 21, 24

U.S. Const. Article VI, Par. 3 ............................................................................................ 21, 24

## JURISDICTION

The Plaintiff is a resident and registered voter in the State of New York, and the Complaint concerns a constitutional question. This Court has jurisdiction under 28 U.S.C. § 2403(a) with respect to a constitutional question.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

U.S. Const. Article I, § 1 provides in pertinent part:
● All legislative Powers herein granted shall be vested in a Congress of the United States.

U.S. Const. Article I, § 2 Clause 1 (the House by People clause) provides in pertinent part:
● … The House of Representatives shall be composed of Members chosen every second Year by the People of the several States.

U.S. Const. Article I, § 2 Clause 3 (the Equal Representation clause) provides in pertinent part:
● …which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons.

U.S. Const. Article I, § 3 Clause 1 (the Senate clause) provides in pertinent part:
● The Senate of the United States shall be composed of two Senators from each State.

U.S. Const. Article I, § 4 Clause 1 provides in pertinent part:
● The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations.

U.S. Const. Article II, § 1 (the Electoral College clause) provides in pertinent part:
● Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress.

U.S. Const. Article III, § 1 provides in pertinent part:
● The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.

U.S. Const. Article III, § 2 provides in pertinent part:
- The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States… to Controversies to which the United States shall be a Party.

U.S. Const. Article IV, § 2 (the Privilege & Immunity clause) provides in pertinent part:
- The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

U.S. Const. Article IV, § 4 provides in pertinent part:
- The United States shall guarantee to every State in this Union a Republican Form of Government.

U.S. Const. Article VI, Par. 2 provides in pertinent part:
- This Constitution, and the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Article VI, Par. 3 provides in pertinent part:
- The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution.

U.S. Const. Amend. I. provides in pertinent part:
- Congress shall make no law … or abridging the freedom of speech … or the right of people … and to petition the Government for a redress of grievances.

U.S. Const. Amend. V. provides in pertinent part:
- No person shall be … nor be deprived of life, liberty, or property, without due process of law.

U.S. Const. Amend. XIV. § 1. provides in pertinent part:
- No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;
- …nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV. § 2. provides in pertinent part:
- Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed.
- But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress… or in any way abridged.

U.S. Const. Amend. XIV. § 5. provides in pertinent part:
- The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

**<u>STATEMENT OF FACTS</u>**

1. At the Constitutional Convention 1787, James Madison proposed the Virginia Plan which included a bicameral legislature. The population was to elect the members of the lower house which in turn would elect the representatives in the upper house. William Patterson put forward a counter proposal, the New Jersey Plan, which called for equal representation of each state in a unicameral legislature. The convention fell into a deadlock until Roger Sherman from Connecticut proposed a compromise.

2. Writing for the Supreme Court decision in *Wesberry v. Sanders*, 376 U.S. 1 (1964), Justice Black recounted this founding chapter of our country in details as follows:

   *The question of how the legislature should be constituted precipitated the most bitter controversy of the Convention.*
   *……*
   *<u>The dispute came near ending the Convention without a Constitution</u>. Both sides seemed for a time to be hopelessly obstinate. Some delegations threatened to withdraw from the Convention if they did not get their way. Seeing the controversy growing sharper and emotions rising, the wise and highly respected Benjamin Franklin arose and pleaded with the delegates on both sides to "part with some of their demands, in order that they may join in some accommodating proposition."*
   *……*
   *The deadlock was finally broken when <u>a majority of the States agreed to what has been called the Great Compromise</u>, based on a proposal which had been repeatedly advanced by Roger Sherman and other delegates from Connecticut.*
   *……*
   *The debates at the Convention make at least one fact abundantly clear: that, when the delegates agreed that <u>the House should represent "people</u>," they intended that, in allocating Congressmen, <u>the number assigned to each State should be determined solely by the number of the State's inhabitants</u>. The Constitution embodied Edmund Randolph's proposal for a periodic census to ensure <u>"fair representation of the people</u>," an idea endorsed by Mason as assuring that "<u>numbers of inhabitants" should always be the measure of representation in the House of Representatives</u>. The Convention also <u>overwhelmingly agreed to a resolution offered by Randolph to base future apportionment squarely on numbers</u> and to delete any reference to wealth. And <u>the delegates defeated a motion made by Elbridge Gerry to limit the number of Representatives from newer Western States so that it would never exceed the number from the original States</u>.*

3. To balance the interest between the more populous states and the less populous states, our founding fathers reached the Great Compromise, which was literally the founding agreement for the Union.

It established the bicameral national legislature where the populace was represented at the House of Representatives, while the states were represented at the Senate.

4. As William Johnson of Connecticut said, "in *one* branch, the *people* ought to be represented; in the *other,* the *States.*" According to the Great Compromise, the Constitution provides:

(1) Article I, § 2 Clause 1: the House of Representatives shall be elected by the People;

(2) Article I, § 2 Clause 3: the number of house seats shall be apportioned by each state's population;

(3) Article I, § 3 Clause 1: each state shall have 2 senators in the Senate regardless of population.

5. The founding fathers clearly agreed and demanded that these three constitutional provisions shall and must be honored and enforced simultaneously. In another word, within the two sides of the founding agreement, if the House side is not honored, the Senate side becomes invalid too.

6. In fact, the original first amendment was proposed by Madison to tie the number of the house seats to national population. It was ratified by eight states, only one state short to be fully ratified.

7. After the Constitution was adopted and ratified, James Wilson of Pennsylvania, as one of the most active members at the Convention and then an Associate Justice of this Court, reaffirmed:

*All elections ought to be equal. Elections are equal when a given number of citizens in one part of the state choose as many representatives as are chosen by the same number of citizens in any other part of the state. In this manner, the proportion of the representatives and of the constituents will remain invariably the same.*

8. On April 5, 1792, Washington, convinced by Jefferson, exercised the very first presidential veto in the U.S. history to reject a Congressional bill that introduced a new plan for allocating house seats among states on the ground that it was unconstitutional and liable to be abused in the future. Jefferson said, "If the [ratio of] representation [is] obtained by any process not prescribed in the Constitution, it [then] becomes arbitrary and inadmissible" and suggested apportionment instead be derived from "arithmetical operation, about which no two men can ever possibly differ."

Washington's veto sent the bill back to Congress, which in turn drafted a new bill that apportioned representatives at "the ratio of one for every thirty-three thousand persons in the respective States."

9. As a result, the Apportionment Act of 1792 was passed by Congress on April 10, 1792, and signed into law by Washington on April 14, 1792. The law set the number of House Representatives at 105, effective with the 3rd Congress on March 4, 1793, which would be allotted to each state based upon the 1790 Census. During the subsequent decades Congress updated the number of house seats and allocation to reflect the population growth and shift among states.

10. The 1911 Apportionment Act capped the number of house seats at 435. The Reapportionment Act of 1929 established a permanent method for reallocating the 435 seats among the states. The Apportionment Act of 1941 made the apportionment process self-executing after each decennial census. Congress has used the following Apportionment Formulas to determine which state gets the next available seat. Therefore, in terms of the right to equal representation at the House, some Americans get higher priority than the others based on state residence.

The formula for determining the priority of a state to be apportioned the next available seat defined by the method of equal proportions is

$$A_n = \frac{P}{\sqrt{n(n+1)}}$$

where $P$ is the population of the state, and $n$ is the number of seats it currently holds before the possible allocation of the next seat. An equivalent, recursive definition is

$$A_{n+1} = \sqrt{\frac{n}{n+2}}\, A_n$$

where $n$ is still the number of seats the state has before allocation of the next, and for $n = 1$, the initial $A_1$ is explicitly defined as

$$A_1 = \frac{P}{\sqrt{2}}$$

11. Following the 2010 Census, Wyoming gets one (1) house seat for its population of 563,626, while NY gets only 27 house seats for its population of 19,378,561, i.e. 717,707 per house seat. Effectively, NY residents have been deprived of 7.4 house seats, or under-represented by 21%. By the same calculation, CA has been deprived of by 13 seats, TX by 9 seats, and FL by 6 seats, respectively. In total, 39 states (96% of national population) were under-represented by a total of 110 house seats. Other than Wyoming, 48 states are under-represented between 7% (Nebraska) and

43% (Montana), while Rhode Island is the only one over-represented at 7%. See full details in Exhibit A.

| 2010 | Total | 308,745,538 | 435 | 710,206 | 563,626 | 39 | 110 | 296,020,412 | 281,813 | 1.5% |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | -43% | 7% | 96% | | |
| Index | State | Population 2010 | # of House Seats Allocated | Population per HouseSeat | # of House Seats Based on WY Population | Under-represented at the House % | # of House Seats Deprived | States Under represented by at least 1 seat | Population per Senate Seat | Disparaty per Senate Seat |
| 1 | California | 37,253,956 | 53 | 702,905 | 66.1 | -20% | 13 | 37,253,956 | 18,626,978 | 1.5% |
| 2 | Texas | 25,145,561 | 36 | 698,488 | 44.6 | -19% | 9 | 25,145,561 | 12,572,781 | 2.2% |
| 3 | New York | 19,378,102 | 27 | 717,707 | 34.4 | -21% | 7 | 19,378,102 | 9,689,051 | 2.9% |
| 4 | Florida | 18,801,310 | 27 | 696,345 | 33.4 | -19% | 6 | 18,801,310 | 9,400,655 | 3.0% |
| 50 | Wyoming | 563,626 | 1 | 563,626 | 1.0 | 0% | 0 | - | 281,813 | 100.0% |

12. Following the 2000 Census, other than Wyoming, 49 states are under-represented between 6% (Rhode Island) and 45% (Montana). The top-4 states (CA, TX, NY, FL) were under-represented by 16, 10, 9 and 7 seats, respectively. In total, 43 states (98% of national population) were under-represented by a total of 134 house seats. See full details in Exhibit B.

| 2000 | Total | 281,421,906 | 435 | 649,659 | 493,782 | 43 | 134 | 274,506,987 | 246,891 | 1.5% |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | -45% | 0% | 98% | | Lowest |
| Index | State | Population 2000 | # of House Seats Allocated | Population per HouseSeat | # of House Seats Based on WY Population | Under-represented at the House % | # of House Seats Deprived | States Under represented by at least 1 seat | Population per Senate Seat | Disparaty per Senate Seat |
| 1 | California | 33,871,648 | 53 | 639,088 | 68.6 | -23% | 16 | 33,871,648 | 16,935,824 | 1.5% |
| 2 | Texas | 20,851,820 | 32 | 651,619 | 42.2 | -24% | 10 | 20,851,820 | 10,425,910 | 2.4% |
| 3 | New York | 18,976,457 | 29 | 654,361 | 38.4 | -25% | 9 | 18,976,457 | 9,488,229 | 2.6% |
| 4 | Florida | 15,982,378 | 25 | 639,295 | 32.4 | -23% | 7 | 15,982,378 | 7,991,189 | 3.1% |
| 50 | Wyoming | 493,782 | 1 | 493,782 | 1.0 | 0% | 0 | - | 246,891 | 100.0% |

13. Following the 1990 Census, other than Wyoming, 49 states are under-represented between 10% (Rhode Island) and 43% (Montana). The top-4 states (CA, NY, TX, FL) were under-represented by 14, 9, 7, and 6 seats, respectively. In total, 39 states (96% of national population) were under-represented by a total of 110 house seats. See full details in Exhibit C.

| 1990 | Total | 248,709,873 | 435 | 574,316 | 453,588 | 39 | 110 | 237,910,468 | 226,794 | 1.5% |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | -43% | 0% | 96% | | Lowest |
| Index | State | Population 1990 | # of House Seats Allocated | Population per HouseSeat | # of House Seats Based on WY Population | Under-represented at the House % | # of House Seats Deprived | States Under represented by at least 1 seat | Population per Senate Seat | Disparaty per Senate Seat |
| 1 | California | 29,760,021 | 52 | 572,308 | 65.6 | -21% | 14 | 29,760,021 | 14,880,011 | 1.5% |
| 2 | New York | 17,990,455 | 31 | 580,337 | 39.7 | -22% | 9 | 17,990,455 | 8,995,228 | 2.5% |
| 3 | Texas | 16,986,510 | 30 | 566,217 | 37.4 | -20% | 7 | 16,986,510 | 8,493,255 | 2.7% |
| 4 | Florida | 12,937,926 | 23 | 562,519 | 28.5 | -19% | 6 | 12,937,926 | 6,468,963 | 3.5% |
| 50 | Wyoming | 453,588 | 1 | 453,588 | 1.0 | 0% | 0 | - | 226,794 | 100.0% |

14. According to the Great Compromise reached by the founding fathers, each state gets two seats in the Senate, hence causing huge disparity measured by comparing the population per senate seat for Wyoming and for every other state. For example, based on the 2010 Census, NY gets one senate seat per 9,689,051 persons while Wyoming gets one senate seat per 281,813 persons, hence a New Yorker is weighted as only 2.9% (281,813/9,689,051) of a Wyomingite for each senate seat (Exhibit A).

15. By the same calculation, a New Yorker is weighted as only 2.6% and 2.5% of a Wyomingite for each senate seat, respectively, based on the 2000 Census (Exhibit B) and the 1990 Census (Exhibit C).

16. As of 2017 the compensation for most congressional members is $174,000, the Speaker of the House receives $223,500, and the majority and minority leaders in the House receive $193,000. As of June 2017, the average Members' Representational Allowance (MRA) was $1,315,523 per representative.

17. Plaintiff surveyed 16 developed democratic countries based on https://en.wikipedia.org/wiki/, and found the U.S. has by far the highest population per lower house seat among these countries, almost 3 times as much as Japan, the second on the list (see table below). In particular, Japan, Germany, France, and the U.K. have more lower House Representatives than the U.S. does despite far less population. For example, the U.K. population is only 20% of the U.S. population, but its House of Commons has 650 members, averaging only 101,569 persons per one seat vs. 748,736 persons per one seat in the U.S. In fact, when the Apportionment Act 1911 capped the number of house seats at 435, the population per seat was c.a. 210, 000, much closer to the other 15 surveyed countries.

18. Besides having by far the highest population per seat, the U.S. is also much larger in geographical size than the other 14 countries except Canada, it is impossible for the U.S. House Representatives to serve their constituents as effectively as their counterparts in the other 15 developed

democracies.  When on average a representative has to serve 748,736 constituents, it invariably

means he/she

becomes inaccessible or even unaccountable to most constituents.

| Ranking of Developed Democratic Countries by Representation of Population at the Lower House | | | | | |
|---|---|---|---|---|---|
| **Source:** | https://en.wikipedia.org/wiki/ | | | | |
| **Ranked by Population per House Seat** | **Country** | **Population as of 2017 (millions)** | **Population as % of the U.S.** | **# of House Seats** | **Population per House Seat** | **Population per House Seat as % of the U.S.** |
| 1 | USA | 325.70 | 100% | 435 | 748,736 | 100% |
| 2 | Japan | 126.80 | 39% | 465 | 272,688 | 36% |
| 3 | Australia | 24.60 | 8% | 150 | 164,000 | 22% |
| 4 | Germany | 82.79 | 25% | 709 | 116,770 | 16% |
| 5 | France | 67.12 | 21% | 577 | 116,326 | 16% |
| 6 | Netherlands | 17.08 | 5% | 150 | 113,867 | 15% |
| 7 | Canada | 36.71 | 11% | 338 | 108,609 | 15% |
| 8 | UK | 66.02 | 20% | 650 | 101,569 | 14% |
| 9 | Beligum | 11.35 | 3% | 150 | 75,667 | 10% |
| 10 | Austria | 8.77 | 3% | 183 | 47,940 | 6% |
| 11 | Switzerland | 8.42 | 3% | 200 | 42,100 | 6% |
| 12 | New Zealand | 4.79 | 1% | 120 | 39,950 | 5% |
| 13 | Denmark | 5.77 | 2% | 179 | 32,235 | 4% |
| 14 | Norway | 5.26 | 2% | 169 | 31,112 | 4% |
| 15 | Sweden | 10.00 | 3% | 349 | 28,639 | 4% |
| 16 | Finland | 5.50 | 2% | 200 | 27,515 | 4% |

# CONGRESS HAS DISHONORED THE FOUNDING AGREEMENT

1. As aforementioned, there is a huge disparity per Senate seat among states. A New Yorker is weighted as only 2.2% / 2.6% / 2.9% of a Wyomingite based on 1990 / 2000 / 2010 Census, respectively. The Great Compromise, the very first contractual agreement reached by our founding fathers, was supposed to balance such enormous inequality in favor of the less populous states in the Senate with the allocation of the House seats proportional to each state's population.

2. However, Congress since 1911 has collectively failed to (1) honor the Great Compromise reached by the founding fathers, foremostly Washington, Adams, Jefferson, and Madison; and (2) comply with the Constitution Article I, § 2 Clauses 1 & 3, which mandate House Representatives to be elected by the People and allocated among states based on each state's population.

3. Writing for the Court in *Wesberry v. Sanders* (1964), Justice Black declared emphatically:

   *We hold that, construed in its historical context, the command of Article I, § 2 that <u>Representatives be chosen "by the People of the several States" means that, as nearly as is practicable</u>, <u>one man's vote in a congressional election is to be worth as much as another's</u>. ...*
   *We do not believe that the Framers of the Constitution intended to permit the same vote-diluting discrimination to be accomplished through the device of districts containing widely varied numbers of inhabitants. <u>To say that a vote is worth more in one district than in another would not only run counter to our fundamental ideas of democratic government</u>, <u>it would cast aside the principle of a House of Representatives elected "by the People,"</u> a principle tenaciously fought for and established at the Constitutional Convention. The history of the Constitution, particularly that part of it relating to the adoption of Article I, § 2, reveals that those who framed the Constitution meant that, <u>no matter what the mechanics of an election</u>, whether statewide or by districts, <u>it was population which was to be the basis of the House of Representatives</u>.*

4. *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) reminded us that each generation of Americans including each Congress have the duty to uphold the Constitution:

   *Our Constitution is a covenant running <u>from the first generation of Americans to us and then the future generations</u>. It is a coherent succession. Each generation must learn anew that <u>the Constitution's written terms embody ideas and aspirations that must survive more ages than one.</u>*

5. While *Wesberry v. Sanders* (1964) concerned the rights to equal representation at the House and equal vote in electing representatives among residents of different congressional districts within

one state, the same constitutional principle and legal reasoning shall certainly apply to the same rights

among residents of different states, which is the core issue raised by Plaintiff.

6.  What has transpired since 1911 is exactly what our two most important founding fathers, Washington and Jefferson, clearly rejected in 1792: the current cap and allocation mechanism have produced <u>arbitrary and inadmissible</u> unequal representation that are not derived from <u>arithmetical operation</u>.

7.  There is absolutely no constitutional provision for – and our founding fathers would have been outraged by - **the Apportionment Formulas** which assign priority to some states for the next seat while condemning residents of other states as "lower priority" for at least a decade, if not decades.

8.  Furthermore, the founding agreement consists of two sides: the House by population and the Senate by states. By defrauding the House side of the founding agreement for more than 100 years and counting, Congress has simultaneously delegitimized the Senate which has become a lopsided oppressive body in favor of less than 5% of population at the expense of over 95% of Americans. Without equal representation of population at the House, the Senate has become unconstitutional too.

9.  By capping the number of house seats to 435, Congress has ignored (1) the fact that delegates defeated the motion to put a limit on the number of house seats for the western states, and (2) the warning of "vicious representation" by Madison, widely considered the Father of the Constitution.

10. Writing for the Court in *Wesberry v. Sanders* (1964), Justice Black reminded us that:

> It would defeat the principle solemnly embodied in the Great Compromise -- <u>equal representation in the House for equal numbers of people</u> -- for us to hold that, within the States, legislatures may draw the lines of congressional districts in such a way as to give some voters a greater voice in choosing a Congressman than others. The House of Representatives, the Convention agreed, was to represent the people as individuals, and <u>on a basis of complete equality for each voter</u>. <u>The delegates were quite aware of what Madison called the "vicious representation"</u> in Great Britain whereby "rotten boroughs" with few inhabitants were represented in Parliament on or almost on a par with cities of greater population.
> ...

*The delegates referred to <u>rotten borough apportionments</u> in some of the state legislatures <u>as the kind of objectionable governmental action</u> that the Constitution should not tolerate in the election of congressional representatives. … <u>Speakers at the ratifying conventions emphasized that the House of Representatives was meant to be free of the malapportionment</u> then existing in some of the state legislatures -- such as those of Connecticut, Rhode Island, and South Carolina -- and argued that the power given Congress in Article I, § 4, as meant to be used to vindicate <u>the people's right to equality of representation in the House</u>. Congress' power, said John Steele at the North Carolina convention, was not to be used to allow Congress to create rotten boroughs.*

## CONGRESS HAS VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS

1. America was founded upon a set of ideals enshrined by the <u>Declaration of Independence</u>:

   *(1) Liberty & Equality: "All men are created equal with certain unalienable rights";*
   *(2) Republic: "That to secure these rights, Governments are instituted among Men";*
   *(3) Democracy: "Deriving their just powers from the consent of the governed".*

2. The Constitution starts with "We the People". For the principle of "all men are created equal" to hold true, there must be equal respect of human dignity. And nothing manifests human dignity more than a free person's sacred vote. By causing significant unequal representation at the House and diluting vote value in electing representatives for over 95% of Americans due to state residence, Congress has violated the aforementioned founding principles and the following constitutional provisions.

3. **Article I, § 2 Clauses 1 & 3** mandate the House Representatives are chosen by the People based on population, hence guaranteeing every American's right to equal representation at the House. The significant unequal representation represents a gross betrayal of the founding agreement and union spirit, causing over 95% of Americans double-disadvantaged in both the House and the Senate.

4. **Article II, § 1** mandates that each state's electoral votes for presidential elections are equal to the number of representatives and senators. Hence the significant under-representation at the House has further inflicted a **Triple-Injustice** upon over 95% of Americans with respect to the House, the Senate and the presidential elections.

5. **Article IV, § 2** mandates that Citizens of all state shall be entitled to the same Privileges and Immunities. Equal representation in the House is one of such privileges for all Americans guaranteed by the Constitution. Since 1911 Congress has collectively violated such fundamental privilege.  More despicably, **the Apportionment Formulas** have discriminated against some states while favoring the other states. In fact, from 1990 to 2010 NY lost 4 seats despite its population grew by 1.4 million, while TX and FL gained 6 and 4 seats, respectively, and Wyoming is always guaranteed 1 seat. Among all fellow Americans, New Yorkers have been ranked the lowest and deprived of the most.

6. **The First Amendment** prohibits any law that abridges the freedom of speech. Residents of each state elect their representatives to the House who in turn speak and vote on behalf of their constituents on various issues that affect their daily life.  By diluting the right to equal representation in the House, Congress has undermined Plaintiff's and overwhelming majority of Americans' voice and expression, hence violating our freedom of speech.

7. **The Fifth Amendment** guarantees NO American shall be deprived of life, liberty, or property without due process of law. The guaranty of due process demands laws shall not be unreasonable, arbitrary or capricious. The Exhibit A shows the current allocation method results in a wide gap of representation among states, from over-representation of 7% enjoyed by Rhode Island to under-representation of 43% suffered by Montana. There is no justification for some Americans enjoying over-representation while 95% being condemned to under-representation due to state residence. Such arbitrary and capricious malapportionment illustrates **the first violation of the Fifth Amendment**.

8. Secondly, assuming Jack and Jill are brother and sister, if Jack moves from Rhode Island (1,052,567 given 2 seats) to Montana (989,415 given 1 seat), his right to be represented decreases by half; and if Jill moves from Montana to Rhode Island, her right to be represented doubles. In Plaintiff's case, in order to enjoy the right to equal representation in full, Plaintiff would have to

move to states such as Wyoming or Vermont. No American shall be punished for exercising their freedom to choose where to live (liberty). This demonstrates **the second violation of the Fifth Amendment**.

9.  Furthermore, if any suspect must be informed of his/her Miranda right under the Fifth Amendment, all law-binding citizens certainly must be informed of their fundamental rights before being gravely violated. Congress has never informed the general public of (1) such significant under-representation for the overwhelming majority of Americans, and (2) the fact that such unequal representation has violated the founding agreement reached by the framers. Even *New York Times* failed in its 11/09/2018 Editorial to point out the founding agreement has been dishonored and the Constitution violated. The absence of public knowledge and debate on this gross violation of the founding agreement and the Constitution indicates **violation of procedural Due Process**. Finally, the 1941 Apportionment Act deprived all future generations of the Due Process to review and update the cap and allocation of house seats based on the ever-changing population among the 50 states.

10. **The Fourteenth Amendment § 1** guarantees every citizen's equal privileges or immunities, every person's life, liberty, or property with due process of law and equal protection of the laws. In this case, it is Congress who enacted the Apportionment Acts that have caused over 95% Americans to be under-represented at the House. Furthermore, **the Apportionment Formulas** have assigned priority to some states for the next house seat while condemning residents of other states as "low priority". Therefore, Congress has violated the Due Process and Equal Protection for all Americans with respect to the fundamental right to equal representation at the House. It would be a mockery if one argues the Fourteenth Amendment does not apply to Congress.

11. **The Fourteenth Amendment § 2** reaffirms apportionment based on population, and abolished the infamous Three-Fifths clause, declaring counting a person less than a whole number unconstitutional. Under the current allocation of house seats, a New Yorker is weighted as 79% of

a Wyomingite, residents in Montana are weighted only 57% of a Wyomingite, and over 95% of Americans are counted less than a whole number in terms of each house seat allocated.

12. **The Fourteenth Amendment § 2** further mandates the right to vote at any election including "Representatives in Congress" shall not be abridged in any way. Diluting overwhelming majority of Americans' vote in electing the House Representatives is the exact definition of abridging.

13. Writing for the Court in *Wesberry v. Sanders* (1964), Justice Black reminded us unequivocally:

*It is in the light of such history that we must construe Article I, § 2, of the Constitution, which, carrying out the ideas of Madison and those of like views, provides that <u>Representatives shall be chosen "by the People of the several States</u>," and shall be "<u>apportioned among the several States . . . according to their respective Numbers</u>."*

*Madison said in No. 57 of The Federalist: "Who are to be the electors of the Federal Representatives? Not the rich more than the poor; not the learned more than the ignorant; not the haughty heirs of distinguished names more than the humble sons of obscure and unpropitious fortune. <u>The electors are to be the great body of the people of the United States</u>."*

### <u>PLAINTIFF HAS THE STANDING TO SUE</u>

1. The Defendants will likely make a motion to dismiss this case claiming lack of injury-in-fact. The "injury-in-fact" criteria may be appropriate for cases involved bodily harm or monetary loss, but it should not be applicable in cases concerning constitutionally protected rights.  When Solomon Northup's (*Twelve Years a Slave*) human dignity was deprived of during Slavery, when Susan Anthony's right to vote was denied before 1919, when Oliver Brown's equal protection was refused in 1954, when Ernesto Miranda's due process was negated in 1963 … how can such injustice be measured in monetary terms?  History has clearly repudiated such dubious argument.

2. Secondly, in the *Dred Scott v. Sandford* (1857) decision, Mr. Scott was denied justice also for lack of standing. This decision has been universally considered the worst court decision in our country's history, and indisputably repudiated by the 13th and 14th Amendments. Since then, the Supreme Court has repeatedly affirmed plaintiffs' standing to assert their fundamental rights such as equal protection in *Brown v. BoE* 347 U.S. 483 (1954) for blacks, privacy in *Roe v. Wade* 410 U.S. 113

(1973) for women, and marriage equality in *Obergefell v. Hodges* 576 U.S. ___ (2015) for gays and lesbians.

3. The Defendants will also likely argue for dismissal on lack of concrete specific injury because over 95% of Americans have been subject to the same **Triple-Injustice**. Such "widely-shared-hence-no-standing" (WSHNS) legal reasoning means if a harm is imposed upon and shared by a large population, then no one in this population has standing to sue. However, as Dr. King said, "Injustice anywhere is a threat to justice everywhere."

4. First of all, many authoritarian regimes have employed such perverse logic to oppress their people into silence, and crack down anyone who dares to challenge. Plaintiff believe our country, America, – "*a Shining City on a Hill*" - is genuinely and constitutionally better than those authoritarian regimes.

5. Secondly, the logic of WSHNS is dubious at best. If a citizen's complaint must be based on an individualized injury, it means an existing law applies only to this citizen. However, laws are supposed to apply to all people if such laws are just rather than discriminatory. Hence when constitutional rights were violated by a law, it had always occurred upon a significant portion of population, such as the Three-Fifths clause, the Fugitive clause, and Jim Crow Laws. By the WSHNS logic, Dred Scott, Homer Plessy, Susan Anthony, Oliver Brown, Rosa Parks, etc. could never have standing to sue, and should have simply stayed quiet and obedient in the face of injustice. However, the Supreme Court has repeatedly rejected the WSHNS logic in numerus decisions, *U.S. v. SCRAP* 412 US (1973), *FEC v. Akins* 542 U.S. (1998), and *Mass. v EPA* 549 U.S. 497 (2007).

6. In addition, *Lujan v. Defenders of Wildlife* (1992) recognized procedural right in its Footnote 7:

   *The person who has been accorded a procedural right to protect his concrete interest can assert that right without meeting all the normal standards for redressability and immediacy." The right to vote is the constitutional "concrete interest", and the equal treatment of every vote in elections is part of the procedural rights that protect such constitutional "concrete interest.*

7. What is at stake are the fundamental rights to equal representation and equal vote for Plaintiff and all Americans. Writing for the Court in *Wesberry v. Sanders* (1964) Justice Black clearly affirmed:

*It is not surprising that <u>our Court has held that this Article gives persons qualified to vote a constitutional right to vote and to have their votes counted</u>. United States v. Mosley, 238 U. S. 383; Ex Parte Yarbrough, 110 U. S. 651. Not only can this right to vote not be denied outright, it cannot, consistently with Article I, be destroyed by alteration of ballots, see United States v. Classic, 313 U. S. 299, or diluted by stuffing of the ballot box, see United States v. Saylor, 322 U. S. 385. <u>No right is more precious</u> in a free country than that of <u>having a voice in the election</u> of those who make the laws under which, as good citizens, we must live. <u>Other rights, even the most basic, are illusory if the right to vote is undermined</u>.*

8. *Baker v. Carr*, 369 U.S. 186 (1962) overturned the lower court decision, affirmed the plaintiff's standing to sue Carr ex officio as Secretary of State to assert the constitutionally guaranteed right to equal representation in state legislature, and established the "One Person One Vote" constitutional principle. Writing for the Court, Justice Brennan firmly established:

*These plaintiffs and others similarly situated, are denied the equal protection of the laws accorded them by the Fourteenth Amendment by virtue of the debasement of their votes.*

9. *Reynolds v. Sims*, 377 U.S. 533 (1964) again affirmed the plaintiff's standing to assert his constitutionally guaranteed right to equal representation in state senate and re-affirmed the principle of "One Person One Vote". Writing for the Court, Chief Justice Warren declared unequivocally:

*Diluting weight of votes because of place of residence impairs basic constitutional rights under the 14th Amendment … <u>The weight of citizen's vote cannot be made to depend on where he lives</u>.*

10. The First Amendment guarantees every American's right to petition for a redress of grievance. There is no greater grievance than deprivation of the right to equal representation and dilution of our right to equal vote in electing house members. If the claim of lack of standing is accepted in this case, this part of the First Amendment would not even be worth of the paper it is printed on.

11. Furthermore, writing for the Court in *Paul v. Davis*, 424 U.S. 693 (1976) Justice Rehnquist established that "*we have repeatedly ruled that the procedural guarantee of the 14th Amendment apply whenever the State seeks to remove or significantly alter that protected status*". Since 1911

Congress has significantly undermined the right to equal representation at the House and the right to equal vote in electing house representatives. Plaintiff's standing before the court is therefore guaranteed by the Due Process clause and has been affirmed by the Court's previous decisions.

12. Writing for the Court in *Wesberry v. Sanders* (1964) Justice Black ruled unequivocally that the District Court was wrong to dismiss the plaintiff's claim:

*We agree with Judge Tuttle that, <u>in debasing the weight of appellants' votes, the State has abridged the right to vote for members of Congress</u> guaranteed them by the United States Constitution, <u>that the District Court should have entered a declaratory judgment to that effect</u>, and that <u>it was therefore error to dismiss this suit</u>. The question of what relief should be given we leave for further consideration and decision by the District Court in light of existing circumstances.*

## THE COURT HAS THE POWER AND DUTY TO REDRESS

1. The Defendants will likely claim that the issue involved is a so-called political question, hence the Court has no jurisdiction over Congress's law-making.

2. The U.S. Const. Article III, § 1 declares that the Judicial Power shall be vested in the Supreme Court and its lower courts. Article III, § 2 further provides that the judicial Power shall extend to all Cases including disputes related to the Constitution, the federal Laws and controversies with the United States being a party.

3. *Marbury v. Madison*, 5 U.S. 137 (1803) established that the Court has the absolute power to review all acts of Congress where constitutionality is at issue, judge whether they abide by the Constitution, and rule that a law, such as these Apportionment Acts, "repugnant to the Constitution is void".

4. *Baker v. Carr* (1962) essentially repudiated the *Colegrove v. Green*, 328 U.S. 549 (1946) decision holding that malapportionment claims under the Equal Protection Clause of the Fourteenth Amendment were not exempt from judicial review under Article IV, § 4.

5. Writing for the Court in *Wesberry v. Sanders* (1964), Justice Black forcefully rejected the view of "non-justiciability":

*The right to vote is too important in our free society to be stripped of judicial protection by such an interpretation of Article I. This dismissal can no more be justified on the ground of "want of equity" than on the ground of "nonjusticiability." We therefore hold that the District Court erred in dismissing the complaint.*

6. Most of all, *Cotting v. Godard*, 183 U.S. 79 (1901) declared the Court's highest duty is to enforce the Constitution (body and letter) according to the Declaration of Independence (thought and spirit):

   *No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government.*

7. In summary, it is well within the Court's duty and power to review and declare that the existing apportionment laws have (1) dishonored the Great Compromise among the founding fathers, (2) contradicted the House by People clause and the Equal Representation clause, and (3) violated every American's right to equal representation at the House and right to equal vote in congressional elections with respect to the Comity clause, and three subsequent amendments, the First, the Fifth and particularly the Fourteenth.

8. The redress that Plaintiff is seeking is simply for the Court to make a declaratory judgment - as the Supreme Court clearly did in *Wesberry v. Sanders* (1964) – such as follows:

   **The Apportionment Acts of 1911, 1929 and 1941 are unconstitutional with respect to the Great Compromise, Article I, § 1 & 2, Article IV, § 2, the First Amendment, the Fifth Amendment and the Fourteenth Amendment. Every American's rights to equal representation at the House and equal vote in any election shall not be denied, diluted, debased, diminished, demeaned, disadvantaged, or manipulated in any way by any means on any account.**

## CONGRESS HAS THE POWER AND DUTY TO RECTIFY

1. Since the 62nd Congress enacted the 1911 Apportionment Act, all successive classes of Congress have for whatever reason continued such gross collective dereliction of duty, dishonoring the founding agreement and violating the Constitution. With this lawsuit, no member in the current and future Congress can claim any longer ignorance of this grave **Triple-Injustice** imposed upon the overwhelming majority of Americans including Plaintiff.

2. Once the Apportionment Acts of 1911, 1929 and 1941 are declared unconstitutional, the current Congress has the duty and obligation under Article VI, Par. 2 & 3, and the power under Article I, § 1, Article I, § 4, and the Fourteenth Amendment § 5 to enact new apportionment laws to not only honor the Great Compromise – the founding agreement for our Union - reached by the founding fathers, but also uphold the numerous constitutional provisions, namely Article I, § 2, Article IV, § 2, the First Amendment, the Fifth Amendment, and the Fourteenth Amendment.

3. If any member of the 116th Congress refuses to take rectifying actions, it means such congressional member has willfully chosen to deliberately continue …

   (1) dishonoring the memory of our founding fathers,

   (2) defrauding the founding agreement reached by the founding fathers,

   (3) violating Article I, § 2 Clauses 1 & 3, and

   (4) infringing numerous constitutional rights of the overwhelming majority Americans guaranteed by Article IV, and the First, Fifth and Fourteenth Amendments.

4. In such event, those congressional members individually and/or the 116th Congress collectively shall be held in Contempt of Court and of the Constitution with respect to Article VI, Par. 2 & 3 for violating their oath. Furthermore, this means the founding agreement by the founding fathers is now openly and willfully disrespected, dishonored and defrauded by Congress. Therefore, the other side of the founding agreement, the Senate, is no longer legitimate, hence unconstitutional.

### An Arithmetical Solution That Honors the Founding Fathers' Agreement and Criteria

1. Since the Constitution guarantees at least one house seat for each state, the population of the least populous state shall be the basis for allocating the house seats among states through an arithmetical operation insisted by Jefferson, which can be easily understood by the general public.

2. The first possible proposal is "**The Nearest Integer**" which calculates the number of house seats for each of the 50 states as follows (based on 2017 Census estimates):

(1) Wyoming has the least population, hence 579,315 is the divisor to be divided by each state population. For example, NY population (19,849,399)/(579,315) = 34.26, which rounds to the nearest integer, 34. Hence NY's number of seats would increase from 27 to 34, while its representation would improve from under 21.2% to under 0.8%.

(2) This "Nearest Integer" approach will add 126 additional seats to a total of 561, and reduce under-representation to less than 5% for the top 29 populous states. However, representation for less populous states remains unfair. For example, North Dakota and Alaska remain under-represented by 23.3% and 21.7% respectively, Montana and South Dakota become over-represented by 10.3% and 33.2%, respectively, while Rhode Island remains over-represented at 9.3%.

(3) Under this proposal, variances in representation range from under 23% to over 33%, clearly neither equitable nor constitutional. See details in Exhibit D.

3.  The second possible proposal is "**The Nearest Tenth Digit**" which takes the above proposal one step further by rounding all the quotients to the nearest tenth digit:

(1) Wyoming has the least population of 579,315. Hence, NY population (19,849,399) / (579,315) = 34.264, which rounds to the nearest tenth digit, 34.3. NY's number of seats increases from 27 to 34.3, i.e. 33 members have 1 vote each, the 34th member has a vote of 1.3 for a larger district.

(2) There are two distinct but related concepts under this proposal: **members vs. votes**. The current 435-body house will increase by 107 to 542, among which 497 regular members have 1 vote each, and 45 special members have a vote of 1.1 to 1.9, each representing a more populous district in each state. The total house votes would increase to 561.1 with 280.6 being the simple majority.  The number of votes is the ultimate measure of equal representation guaranteed for all Americans by the founding agreement and the Constitution.

(3) Under this proposal, all aforementioned unfair representations in the first proposal are practically resolved: Rhode Island, Montana, North Dakota, and South Dakota would be under-represented by only 1.6%, 0.7%, 0.3%, and 0.1%, respectively, while Alaska being over-represented 1.8%. The variance of representation ranges from under 1.6% to over 2.4%. See details in Exhibit E.

(4) Most importantly, all Americans of all states will be guaranteed equal presentation at the same time, no American of any state would be ranked as "lower priority".

(5) Applying the same arithmetical operation to the three previous censuses, the variance of representations ranges from under 3.1% to over 3.2% for 2010, from under 2.7% to over 2.4% for 2000, and from under 3.3% to over 2.2% for 1990. Hence all are well within +/-4%.

4. Obviously rounding to the nearest hundredth digit would further improve precision. However, the "Nearest Tenth Digit" proposal produces a near precision within +/-4%, and is free of any manipulation that condemns many states as "lower priority". Therefore, **this is an Arithmetical Solution that shall honor our founding fathers' agreement and satisfy their criteria**.

5. As aforementioned, the total cost for one house representative is approximately $1.5 million/year. Adding 107 house members with 126.1 votes would entail a total additional cost approximately $189.4 million/year (1.5 x 126.1 votes). The 2017 Census estimates the U.S. population at 325.7 million, hence it would cost only $0.58 ($189.4/325.7) per person per year.

6. In addition, the Federal Budget for 2017 Fiscal Year included $3.98 trillion expenditures. The additional $189.4 million would account less than 0.005% of the total federal expenditures. By the way, one F-22 Raptor fighter aircraft alone costs $150 million in 2009 or $180 million in 2018.

7. After adding the 107 members to a total of 542 as shown below, the U.S. still by far has the highest ratio of population per house seat, more than twice as much as Japan, the second country on the list.

| Ranking of Developed Democratic Countries by Representation of Population at the Lower House | | | | | | |
|---|---|---|---|---|---|---|
| Source: | https://en.wikipedia.org/wiki/ | | | | | |
| Ranked by Population per House Seat | Country | Population as of 2017 (millions) | Population as % of the U.S. | # of House Seats | Population per House Seat | Population per House Seat as % of |
| 1 | USA - Rectified | 325.70 | 100% | 542 | 600,923 | 100% |
| 2 | Japan | 126.80 | 39% | 465 | 272,688 | 45% |
| 3 | Australia | 24.60 | 8% | 150 | 164,000 | 27% |
| 4 | Germany | 82.79 | 25% | 709 | 116,770 | 19% |
| 5 | France | 67.12 | 21% | 577 | 116,326 | 19% |
| 6 | Netherlands | 17.08 | 5% | 150 | 113,867 | 19% |
| 7 | Canada | 36.71 | 11% | 338 | 108,609 | 18% |
| 8 | UK | 66.02 | 20% | 650 | 101,569 | 17% |
| 9 | Beligum | 11.35 | 3% | 150 | 75,667 | 13% |
| 10 | Austria | 8.77 | 3% | 183 | 47,940 | 8% |
| 11 | Switzerland | 8.42 | 3% | 200 | 42,100 | 7% |
| 12 | New Zealand | 4.79 | 1% | 120 | 39,950 | 7% |
| 13 | Denmark | 5.77 | 2% | 179 | 32,235 | 5% |
| 14 | Norway | 5.26 | 2% | 169 | 31,112 | 5% |
| 15 | Sweden | 10.00 | 3% | 349 | 28,639 | 5% |
| 16 | Finland | 5.50 | 2% | 200 | 27,515 | 5% |

8. Time is of the essence. There is no justification to prolong the current **Triple-Injustice** until after the 2020 Census. Congress has the duty and power to immediately pass **the Apportionment for Equal Representation of Act 2019** underline effective for the upcoming 2020 Elections that will …

(1) increase the number of House Representatives to 542, among which 497 regular members have 1 vote each, and 45 special members have vote of 1.1 to 1.9, as described above;

(2) require each state to redraw its congressional districts with variance in population within +/- 5% by an independent non-partisan commission, or designate the added members/votes at-large;

(3) increase the total electoral votes from currently 538 to 664.1 (100+561.1+3 for DC), so that every state will finally receive its fair share of electoral votes, e.g. 36.3 (2+34.3) electoral votes for NY, rather than 29 (2+27), the candidate who gets 332.1 electoral votes wins the White House;

(4) Following the 2020 Census, further adjustments can be easily made for the 2022 House Election by applying the same underline arithmetical operation as described in the "Nearest Tenth Digit" proposal.  Thereafter similar adjustments shall be made once after each decennial census.

## **CONCLUSION**

1. Were our founding fathers alive today, they would certainly be horrified and outraged by what the existing Apportionment Acts have done for more than 100 years and counting, Washington and Jefferson would have vetoed all of them without any hesitation.

2. Writing for the Supreme Court in *Wesberry v. Sanders*, (1964), Justice Black declared forcefully:

   *While it may not be possible to draw congressional districts with mathematical precision, that is no excuse for ignoring our Constitution's plain objective of making* <u>*equal representation for equal numbers of people the fundamental goal for the House of Representatives. That is the high standard of justice and common sense which the Founders set for us*</u>.

3. In conclusion, here comes a moment of truth to Congress for all Americans of all states:

   (1) the Court has the power and the duty to review and declare the Apportionment Acts of 1911, 1929 and 1941 unconstitutional;

   (2) the 116th Congress has the power, the duty and a historic opportunity to immediately rectify its collective failure since 1911 by enacting **the Apportionment for Equal Representation Act 2019** that will not only restore honor with the Great Compromise and our founding fathers, but also uphold all Americans' fundamental rights to equal representation at the House and equal vote in electing House Representatives with respect to Article I § 2, Article IV § 2, the First, the Fifth and the Fourteenth Amendments;

   (3) the "Nearest Tenth Digit" <u>arithmetical operation</u> will allocate the house seats/votes to all states with a variance within +/-4%, which represents a near precision that shall satisfy Washington, Jefferson, Madison and other founding fathers who can again rest in peace on this account.

   (4) if Congress refuses to rectify its own collective failure, it shall be held in Contempt of Court and of the Constitution, and the Senate shall lose its legitimacy and be declared unconstitutional.

Dated:    Brooklyn, New York
             February 8, 2019

                                 Respectfully submitted,

                                 /s/ *yuxi liu*
                               Yu-Xi (Glen) Liu, Esq. (yl3022)
                               Attorney for Plaintiffs  (347)721-1383
                               602 39th Street, Brooklyn, NY 11232

# Appendix A

| | State-by-State Under-representation at the House of Representatives and Disparity per Senate Seat | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **2010 Census Data** | | | | | | | | | | | |
| | https://en.wikipedia.org/wiki/2010_United_States_Census | | | | | | | | | | | |
| Total | | 308,745,538 | 435 | 710,206 | 563,626 | 39 | 545 | 110 | 296,020,412 | 57.0% | 281,813 | 1.5% |
| | | | | | | -43% | 7% | 96% | | | | |
| Index | State | Population 2010 | # of House Seats Allocated | Population per House Seat | # of House Seats Based on WY Population | Under-represented at the House % | Rounded to the Nearest Integer | # of House Seats Deprived | States Under-represented by at least 1 seat | Vote Value per House Seat as % of WV | Population per Senate Seat | Disparity per Senate Seat |
| 1 | California | 37,253,956 | 53 | 702,905 | 66.1 | -20% | 66 | 13 | 37,253,956 | 80% | 18,626,978 | 1.5% |
| 2 | Texas | 25,145,561 | 36 | 698,488 | 44.6 | -19% | 45 | 9 | 25,145,561 | 81% | 12,572,781 | 2.2% |
| 3 | New York | 19,378,102 | 27 | 717,707 | 34.4 | -21% | 34 | 7 | 19,378,102 | 79% | 9,689,051 | 2.9% |
| 4 | Florida | 18,801,310 | 27 | 696,345 | 33.4 | -19% | 33 | 6 | 18,801,310 | 81% | 9,400,655 | 3.0% |
| 5 | Illinois | 12,830,632 | 18 | 712,813 | 22.8 | -21% | 23 | 5 | 12,830,632 | 79% | 6,415,316 | 4.4% |
| 6 | Pennsylvania | 12,702,379 | 18 | 705,688 | 22.5 | -20% | 23 | 5 | 12,702,379 | 80% | 6,351,190 | 4.4% |
| 7 | Ohio | 11,536,504 | 16 | 721,032 | 20.5 | -22% | 20 | 4 | 11,536,504 | 79% | 5,768,252 | 4.9% |
| 8 | Michigan | 9,883,640 | 14 | 705,974 | 17.5 | -20% | 18 | 4 | 9,883,640 | 80% | 4,941,820 | 5.7% |
| 9 | Georgia | 9,687,653 | 13 | 745,204 | 17.2 | -24% | 17 | 4 | 9,687,653 | 77% | 4,843,827 | 5.8% |
| 10 | North Carolina | 9,535,483 | 14 | 681,106 | 16.9 | -17% | 17 | 3 | 9,535,483 | 83% | 4,767,742 | 5.9% |
| 11 | New Jersey | 8,791,894 | 12 | 732,658 | 15.6 | -23% | 16 | 4 | 8,791,894 | 77% | 4,395,947 | 6.4% |
| 12 | Virginia | 8,001,024 | 11 | 727,366 | 14.2 | -23% | 14 | 3 | 8,001,024 | 77% | 4,000,512 | 7.0% |
| 13 | Washington | 6,724,540 | 10 | 672,454 | 11.9 | -16% | 12 | 2 | 6,724,540 | 84% | 3,362,270 | 8.4% |
| 14 | Massachusetts | 6,547,629 | 9 | 727,514 | 11.6 | -23% | 12 | 3 | 6,547,629 | 77% | 3,273,815 | 8.6% |
| 15 | Indiana | 6,483,802 | 9 | 720,422 | 11.5 | -22% | 12 | 3 | 6,483,802 | 78% | 3,241,901 | 8.7% |
| 16 | Arizona | 6,392,017 | 9 | 710,224 | 11.3 | -21% | 11 | 2 | 6,392,017 | 79% | 3,196,009 | 8.8% |
| 17 | Tennessee | 6,346,105 | 9 | 705,123 | 11.3 | -20% | 11 | 2 | 6,346,105 | 80% | 3,173,053 | 8.9% |
| 18 | Missouri | 5,988,927 | 8 | 748,616 | 10.6 | -25% | 11 | 3 | 5,988,927 | 75% | 2,994,464 | 9.4% |
| 19 | Maryland | 5,773,552 | 8 | 721,694 | 10.2 | -22% | 10 | 2 | 5,773,552 | 78% | 2,886,776 | 9.8% |
| 20 | Wisconsin | 5,686,986 | 8 | 710,873 | 10.1 | -21% | 10 | 2 | 5,686,986 | 79% | 2,843,493 | 9.9% |
| 21 | Minnesota | 5,303,925 | 8 | 662,991 | 9.4 | -15% | 9 | 1 | 5,303,925 | 85% | 2,651,963 | 10.6% |
| 22 | Colorado | 5,029,196 | 7 | 718,457 | 8.9 | -22% | 9 | 2 | 5,029,196 | 78% | 2,514,598 | 11.2% |
| 23 | Alabama | 4,779,736 | 7 | 682,819 | 8.5 | -17% | 8 | 1 | 4,779,736 | 83% | 2,389,868 | 11.8% |
| 24 | South Carolina | 4,625,364 | 7 | 660,766 | 8.2 | -15% | 8 | 1 | 4,625,364 | 83% | 2,312,682 | 12.2% |
| 25 | Louisiana | 4,533,372 | 6 | 755,562 | 8.0 | -25% | 8 | 2 | 4,533,372 | 75% | 2,266,686 | 12.4% |
| 26 | Kentucky | 4,339,367 | 6 | 723,228 | 7.7 | -22% | 8 | 2 | 4,339,367 | 78% | 2,169,684 | 13.0% |
| 27 | Oregon | 3,831,074 | 5 | 766,215 | 6.8 | -26% | 7 | 2 | 3,831,074 | 74% | 1,915,537 | 14.7% |
| 28 | Oklahoma | 3,751,351 | 5 | 750,270 | 6.7 | -25% | 7 | 2 | 3,751,351 | 75% | 1,875,676 | 15.0% |
| 29 | Connecticut | 3,574,097 | 5 | 714,819 | 6.3 | -21% | 6 | 1 | 3,574,097 | 79% | 1,787,049 | 15.8% |
| 30 | Iowa | 3,046,355 | 4 | 761,589 | 5.4 | -26% | 5 | 1 | 3,046,355 | 74% | 1,523,178 | 18.5% |
| 31 | Mississippi | 2,967,297 | 4 | 741,824 | 5.3 | -24% | 5 | 1 | 2,967,297 | 76% | 1,483,649 | 19.0% |
| 32 | Arkansas | 2,915,918 | 4 | 728,980 | 5.2 | -23% | 5 | 1 | 2,915,918 | 77% | 1,457,959 | 19.3% |
| 33 | Kansas | 2,853,118 | 4 | 713,280 | 5.1 | -21% | 5 | 1 | 2,853,118 | 79% | 1,426,559 | 19.8% |
| 34 | Utah | 2,763,885 | 4 | 690,971 | 4.9 | -18% | 5 | 1 | 2,763,885 | 82% | 1,381,943 | 20.4% |
| 35 | Nevada | 2,700,551 | 4 | 675,138 | 4.8 | -17% | 5 | 1 | 2,700,551 | 83% | 1,350,276 | 20.9% |
| 36 | New Mexico | 2,059,179 | 3 | 686,393 | 3.7 | -18% | 4 | 1 | 2,059,179 | 82% | 1,029,590 | 27.4% |
| 37 | West Virginia | 1,852,994 | 3 | 617,665 | 3.3 | -9% | 3 | 0 | - | 91% | 926,497 | 30.4% |
| 38 | Nebraska | 1,826,341 | 3 | 608,780 | 3.2 | -7% | 3 | 0 | - | 93% | 913,171 | 30.9% |
| 39 | Idaho | 1,567,582 | 2 | 783,791 | 2.8 | -28% | 3 | 1 | 1,567,582 | 72% | 783,791 | 36.0% |
| 40 | Hawaii | 1,360,301 | 2 | 680,151 | 2.4 | -17% | 2 | 0 | - | 83% | 680,151 | 41.4% |
| 41 | Maine | 1,328,361 | 2 | 664,181 | 2.4 | -15% | 2 | 0 | - | 85% | 664,181 | 42.4% |
| 42 | New Hampshire | 1,316,470 | 2 | 658,235 | 2.3 | -14% | 2 | 0 | - | 86% | 658,235 | 42.8% |
| 43 | Rhode Island | 1,052,567 | 2 | 526,284 | 1.9 | 7% | 2 | 0 | - | 107% | 526,284 | 53.5% |
| 44 | Montana | 989,415 | 1 | 989,415 | 1.8 | -43% | 2 | 1 | 989,415 | 57% | 494,708 | 57.0% |
| 45 | Delaware | 897,934 | 1 | 897,934 | 1.6 | -37% | 2 | 1 | 897,934 | 63% | 448,967 | 62.8% |
| 46 | South Dakota | 814,180 | 1 | 814,180 | 1.4 | -31% | 1 | 0 | - | 69% | 407,090 | 69.2% |
| 47 | Alaska | 710,231 | 1 | 710,231 | 1.3 | -21% | 1 | 0 | - | 79% | 355,116 | 79.4% |
| 48 | North Dakota | 672,591 | 1 | 672,591 | 1.2 | -16% | 1 | 0 | - | 84% | 336,296 | 83.8% |
| 49 | Vermont | 625,741 | 1 | 625,741 | 1.1 | -10% | 1 | 0 | - | 90% | 312,871 | 90.1% |
| — | District of Columbia | 601,723 | 0 | | | | | | - | | | |
| 50 | Wyoming | 563,626 | 1 | 563,626 | 1.0 | 0% | 1 | 0 | - | 100% | 281,813 | 100.0% |

**Comments:**

| | |
|---|---|
| 1 | Other than Wyoming, 48 states are under-represented between 7% (Nebraska) and 43% (Montana), while Rhode Island is the only one over-represented at 7%. |
| 2 | 39 of the 50 states, or 95.9% of national population are under-represented by at least 1 seat, in a total of 110 seats at the House of Representatives. |
| 3 | Among the 39 states, the top 4 states - CA, TX, NY & FL - are under-represented by 13, 9, 7 and 6 seats, respectively. |
| 4 | The disparity per Senate seat is measured by comparing the population per senate seat for Wyoming and for every other state. For NY residents, it is (281,813/9,689,051 = 2.91%) |
| 5 | Hence in terms of vote value at the Senate, residents of the top 4 states - CA, TX, NY & FL - are weighted only 1.5%, 2.2%, 2.9% and 3.0% of Wyomingite, respectively. |

# Appendix B

https://en.wikipedia.org/wiki/2010_United_States_Census

## State-by-State Under-representation at the House of Representatives and Disparity per Senate Seat
### Census Data as of 2000

| Total | | 281,421,906 | 435 | 649,659 | 493,782 | 43 | 569 | 134 | 274,506,987 | 54.7% | 246,891 | 1.5% |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | -45% | 0% | | 98% | Lowest | | Lowest |
| Index | State | Population 2000 | # of House Seats Allocated | Population per House Seat | # of House Seats Based on WY Population | Under-represented at the House % | Rounded to the Nearest Integer | # of House Seats Deprived | States Under-represented by at least 1 seat | Vote Value per House Seat as % of WV | Population per Senate Seat | Disparity per Senate Seat |
| 1 | California | 33,871,648 | 53 | 639,088 | 68.6 | -23% | 69 | 16 | 33,871,648 | 77% | 16,935,824 | 1.5% |
| 2 | Texas | 20,851,820 | 32 | 651,619 | 42.2 | -24% | 42 | 10 | 20,851,820 | 76% | 10,425,910 | 2.4% |
| 3 | New York | 18,976,457 | 29 | 654,361 | 38.4 | -25% | 38 | 9 | 18,976,457 | 75% | 9,488,229 | 2.6% |
| 4 | Florida | 15,982,378 | 25 | 639,295 | 32.4 | -23% | 32 | 7 | 15,982,378 | 76% | 7,991,189 | 3.1% |
| 5 | Illinois | 12,419,293 | 19 | 653,647 | 25.2 | -24% | 25 | 6 | 12,419,293 | 76% | 6,209,647 | 4.0% |
| 6 | Pennsylvania | 12,281,054 | 19 | 646,371 | 24.9 | -24% | 25 | 6 | 12,281,054 | 76% | 6,140,527 | 4.0% |
| 7 | Ohio | 11,353,140 | 18 | 630,730 | 23.0 | -22% | 23 | 5 | 11,353,140 | 78% | 5,676,570 | 4.3% |
| 8 | Michigan | 9,938,444 | 15 | 662,563 | 20.1 | -25% | 20 | 5 | 9,938,444 | 75% | 4,969,222 | 5.0% |
| 9 | Georgia | 8,186,453 | 13 | 629,727 | 16.6 | -22% | 17 | 4 | 8,186,453 | 78% | 4,093,227 | 6.0% |
| 10 | North Carolina | 8,049,313 | 13 | 619,178 | 16.3 | -20% | 16 | 3 | 8,049,313 | 80% | 4,024,657 | 6.1% |
| 11 | New Jersey | 8,414,350 | 13 | 647,258 | 17.0 | -24% | 17 | 4 | 8,414,350 | 76% | 4,207,175 | 5.9% |
| 12 | Virginia | 7,078,515 | 11 | 643,501 | 14.3 | -23% | 14 | 3 | 7,078,515 | 77% | 3,539,258 | 7.0% |
| 13 | Washington | 5,894,121 | 9 | 654,902 | 11.9 | -25% | 12 | 3 | 5,894,121 | 75% | 2,947,061 | 8.4% |
| 14 | Massachusetts | 6,349,097 | 10 | 634,910 | 12.9 | -22% | 13 | 3 | 6,349,097 | 78% | 3,174,549 | 7.8% |
| 15 | Indiana | 6,080,485 | 9 | 675,609 | 12.3 | -27% | 12 | 3 | 6,080,485 | 73% | 3,040,243 | 8.1% |
| 16 | Arizona | 5,130,632 | 8 | 641,329 | 10.4 | -23% | 10 | 2 | 5,130,632 | 77% | 2,565,316 | 9.6% |
| 17 | Tennessee | 5,689,283 | 9 | 632,143 | 11.5 | -22% | 12 | 3 | 5,689,283 | 78% | 2,844,642 | 8.7% |
| 18 | Missouri | 5,595,211 | 9 | 621,690 | 11.3 | -21% | 11 | 2 | 5,595,211 | 79% | 2,797,606 | 8.8% |
| 19 | Maryland | 5,296,486 | 8 | 662,061 | 10.7 | -25% | 11 | 3 | 5,296,486 | 75% | 2,648,243 | 9.3% |
| 20 | Wisconsin | 5,363,675 | 8 | 670,459 | 10.9 | -26% | 11 | 3 | 5,363,675 | 74% | 2,681,838 | 9.2% |
| 21 | Minnesota | 4,919,479 | 8 | 614,935 | 10.0 | -20% | 10 | 2 | 4,919,479 | 80% | 2,459,740 | 10.0% |
| 22 | Colorado | 4,301,261 | 7 | 614,466 | 8.7 | -20% | 9 | 2 | 4,301,261 | 80% | 2,150,631 | 11.5% |
| 23 | Alabama | 4,447,100 | 7 | 635,300 | 9.0 | -22% | 9 | 2 | 4,447,100 | 78% | 2,223,550 | 11.1% |
| 24 | South Carolina | 4,012,012 | 6 | 668,669 | 8.1 | -26% | 8 | 2 | 4,012,012 | 74% | 2,006,006 | 12.3% |
| 25 | Louisiana | 4,468,976 | 7 | 638,425 | 9.1 | -23% | 9 | 2 | 4,468,976 | 77% | 2,234,488 | 11.0% |
| 26 | Kentucky | 4,041,769 | 6 | 673,628 | 8.2 | -27% | 8 | 2 | 4,041,769 | 73% | 2,020,885 | 12.2% |
| 27 | Oregon | 3,421,399 | 5 | 684,280 | 6.9 | -28% | 7 | 2 | 3,421,399 | 72% | 1,710,700 | 14.4% |
| 28 | Oklahoma | 3,450,654 | 5 | 690,131 | 7.0 | -28% | 7 | 2 | 3,450,654 | 72% | 1,725,327 | 14.3% |
| 29 | Connecticut | 3,405,565 | 5 | 681,113 | 6.9 | -28% | 7 | 2 | 3,405,565 | 72% | 1,702,783 | 14.5% |
| 30 | Iowa | 2,926,324 | 5 | 585,265 | 5.9 | -16% | 6 | 1 | 2,926,324 | 84% | 1,463,162 | 16.9% |
| 31 | Mississippi | 2,844,658 | 4 | 711,165 | 5.8 | -31% | 6 | 2 | 2,844,658 | 69% | 1,422,329 | 17.4% |
| 32 | Arkansas | 2,673,400 | 4 | 668,350 | 5.4 | -26% | 5 | 1 | 2,673,400 | 73% | 1,336,700 | 18.5% |
| 33 | Kansas | 2,688,418 | 4 | 672,105 | 5.4 | -27% | 5 | 1 | 2,688,418 | 73% | 1,344,209 | 18.4% |
| 34 | Utah | 2,233,169 | 3 | 744,390 | 4.5 | -34% | 5 | 2 | 2,233,169 | 66% | 1,116,585 | 22.1% |
| 35 | Nevada | 1,998,257 | 3 | 666,086 | 4.0 | -26% | 4 | 1 | 1,998,257 | 74% | 999,129 | 24.7% |
| 36 | New Mexico | 1,819,046 | 3 | 606,349 | 3.7 | -19% | 4 | 1 | 1,819,046 | 81% | 909,523 | 27.1% |
| 37 | West Virginia | 1,808,344 | 3 | 602,781 | 3.7 | -18% | 4 | 1 | 1,808,344 | 82% | 904,172 | 27.3% |
| 38 | Nebraska | 1,711,263 | 3 | 570,421 | 3.5 | -13% | 3 | 0 | - | 87% | 855,632 | 28.9% |
| 39 | Idaho | 1,293,953 | 2 | 646,977 | 2.6 | -24% | 3 | 1 | 1,293,953 | 76% | 646,977 | 38.2% |
| 40 | Hawaii | 1,211,537 | 2 | 605,769 | 2.5 | -18% | 2 | 0 | - | 82% | 605,769 | 40.8% |
| 41 | Maine | 1,274,923 | 2 | 637,462 | 2.6 | -23% | 3 | 1 | 1,274,923 | 77% | 637,462 | 38.7% |
| 42 | New Hampshire | 1,235,786 | 2 | 617,893 | 2.5 | -20% | 3 | 1 | 1,235,786 | 80% | 617,893 | 40.0% |
| 43 | Rhode Island | 1,048,319 | 2 | 524,160 | 2.1 | -6% | 2 | 0 | - | 94% | 524,160 | 47.1% |
| 44 | Montana | 902,195 | 1 | 902,195 | 1.8 | -45% | 2 | 1 | 902,195 | 55% | 451,098 | 54.7% |
| 45 | Delaware | 783,600 | 1 | 783,600 | 1.6 | -37% | 2 | 1 | 783,600 | 63% | 391,800 | 63.0% |
| 46 | South Dakota | 754,844 | 1 | 754,844 | 1.5 | -35% | 2 | 1 | 754,844 | 65% | 377,422 | 65.4% |
| 47 | Alaska | 626,932 | 1 | 626,932 | 1.3 | -21% | 1 | 0 | - | 79% | 313,466 | 78.8% |
| 48 | North Dakota | 642,200 | 1 | 642,200 | 1.3 | -23% | 1 | 0 | - | 77% | 321,100 | 76.9% |
| 49 | Vermont | 608,827 | 1 | 608,827 | 1.2 | -19% | 1 | 0 | - | 81% | 304,414 | 81.1% |
| — | District of Columbia | 572,059 | 0 | | | | | | - | | | |
| 50 | Wyoming | 493,782 | 1 | 493,782 | 1.0 | 0% | 1 | 0 | - | 100% | 246,891 | 100.0% |

**Comments:**

| 1 | Other than Wyoming, 49 states are under-represented between 6% (Rhode Island) and 45% (Montana). |
|---|---|
| 2 | 43 of the 50 states, or 97.5% of national population were under-represented by at least 1 seat, in a total of 134 seats at the House of Representatives. |
| 3 | Among the 43 states, the top 4 states - CA, TX, NY & FL - were under-represented by 16, 10, 9, and 7 seats, respectively. |
| 4 | The disparity per Senate seat is measured by comparing the population per senate seat for Wyoming and for every other state. For NY residents, it is (246,891/9,488,229 = 2.60%) |
| 5 | Hence in terms of vote value at the Senate, residents of the top 4 states - CA, TX, NY & FL - are weighted only 1.5%, 2.4%, 2.6% and 3.1% of Wyomingite, respectively. |

| | | State-by-State Under-representation at the House of Representatives and Disparity per Senate Seat | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Census Data as of 1990 | | | | | | | | | | |
| | | https://en.wikipedia.org/wiki/1990_United_States_Census | | | | | | | | | | |
| Total | | 248,709,873 | 435 | 574,316 | 453,588 | 39 | 545 | 110 | 237,910,468 | 56.8% | 226,794 | 1.5% |
| | | | | | | -43% | 0% | 96% | | Lowest | | Lowest |
| Index | State | Population 1990 | # of House Seats Allocated | Population per House Seat | # of House Seats Based on WY Population | Under-represented at the House % | Rounded to the Nearest Integer | # of House Seats Deprived | States Under-represented by at least 1 seat | Vote Value per House Seat as % of WV | Population per Senate Seat | Disparity per Senate Seat |
| 1 | California | 29,760,021 | 52 | 572,308 | 65.6 | -21% | 66 | 14 | 29,760,021 | 79% | 14,880,011 | 1.5% |
| 2 | New York | 17,990,455 | 31 | 580,337 | 39.7 | -22% | 40 | 9 | 17,990,455 | 78% | 8,995,228 | 2.5% |
| 3 | Texas | 16,986,510 | 30 | 566,217 | 37.4 | -20% | 37 | 7 | 16,986,510 | 80% | 8,493,255 | 2.7% |
| 4 | Florida | 12,937,926 | 23 | 562,519 | 28.5 | -19% | 29 | 6 | 12,937,926 | 81% | 6,468,963 | 3.5% |
| 5 | Pennsylvania | 11,881,643 | 21 | 565,793 | 26.2 | -20% | 26 | 5 | 11,881,643 | 80% | 5,940,822 | 3.8% |
| 6 | Illinois | 11,430,602 | 20 | 571,530 | 25.2 | -21% | 25 | 5 | 11,430,602 | 79% | 5,715,301 | 4.0% |
| 7 | Ohio | 10,847,115 | 19 | 570,901 | 23.9 | -21% | 24 | 5 | 10,847,115 | 79% | 5,423,558 | 4.2% |
| 8 | Michigan | 9,295,297 | 16 | 580,956 | 20.5 | -22% | 20 | 4 | 9,295,297 | 78% | 4,647,649 | 4.9% |
| 9 | New Jersey | 7,730,188 | 13 | 594,630 | 17.0 | -24% | 17 | 4 | 7,730,188 | 76% | 3,865,094 | 5.9% |
| 10 | North Carolina | 6,628,637 | 12 | 552,386 | 14.6 | -18% | 15 | 3 | 6,628,637 | 82% | 3,314,319 | 6.8% |
| 11 | Georgia | 6,478,216 | 11 | 588,929 | 14.3 | -23% | 14 | 3 | 6,478,216 | 77% | 3,239,108 | 7.0% |
| 12 | Virginia | 6,187,358 | 11 | 562,487 | 13.6 | -19% | 14 | 3 | 6,187,358 | 81% | 3,093,679 | 7.3% |
| 13 | Massachusetts | 6,016,425 | 10 | 601,643 | 13.3 | -25% | 13 | 3 | 6,016,425 | 75% | 3,008,213 | 7.5% |
| 14 | Indiana | 5,544,159 | 10 | 554,416 | 12.2 | -18% | 12 | 2 | 5,544,159 | 82% | 2,772,080 | 8.2% |
| 15 | Missouri | 5,117,073 | 9 | 568,564 | 11.3 | -20% | 11 | 2 | 5,117,073 | 80% | 2,558,537 | 8.9% |
| 16 | Wisconsin | 4,891,769 | 9 | 543,530 | 10.8 | -17% | 11 | 2 | 4,891,769 | 83% | 2,445,885 | 9.3% |
| 17 | Tennessee | 4,877,185 | 9 | 541,909 | 10.8 | -16% | 11 | 2 | 4,877,185 | 84% | 2,438,593 | 9.3% |
| 18 | Washington | 4,866,692 | 9 | 540,744 | 10.7 | -16% | 11 | 2 | 4,866,692 | 84% | 2,433,346 | 9.3% |
| 19 | Maryland | 4,781,468 | 8 | 597,684 | 10.5 | -24% | 11 | 3 | 4,781,468 | 76% | 2,390,734 | 9.5% |
| 20 | Minnesota | 4,375,099 | 8 | 546,887 | 9.6 | -17% | 10 | 2 | 4,375,099 | 83% | 2,187,550 | 10.4% |
| 21 | Louisiana | 4,219,973 | 7 | 602,853 | 9.3 | -25% | 9 | 2 | 4,219,973 | 75% | 2,109,987 | 10.7% |
| 22 | Alabama | 4,040,587 | 7 | 577,227 | 8.9 | -21% | 9 | 2 | 4,040,587 | 79% | 2,020,294 | 11.2% |
| 23 | Kentucky | 3,685,296 | 6 | 614,216 | 8.1 | -26% | 8 | 2 | 3,685,296 | 74% | 1,842,648 | 12.3% |
| 24 | Arizona | 3,665,228 | 6 | 610,871 | 8.1 | -26% | 8 | 2 | 3,665,228 | 74% | 1,832,614 | 12.4% |
| 25 | South Carolina | 3,486,703 | 6 | 581,117 | 7.7 | -22% | 8 | 2 | 3,486,703 | 78% | 1,743,352 | 13.0% |
| 26 | Colorado | 3,294,394 | 6 | 549,066 | 7.3 | -17% | 7 | 1 | 3,294,394 | 83% | 1,647,197 | 13.8% |
| 27 | Connecticut | 3,287,116 | 6 | 547,853 | 7.2 | -17% | 7 | 1 | 3,287,116 | 83% | 1,643,558 | 13.8% |
| 28 | Oklahoma | 3,145,585 | 6 | 524,264 | 6.9 | -13% | 7 | 1 | 3,145,585 | 87% | 1,572,793 | 14.4% |
| 29 | Oregon | 2,842,321 | 5 | 568,464 | 6.3 | -20% | 6 | 1 | 2,842,321 | 80% | 1,421,161 | 16.0% |
| 30 | Iowa | 2,776,755 | 5 | 555,351 | 6.1 | -18% | 6 | 1 | 2,776,755 | 82% | 1,388,378 | 16.3% |
| 31 | Mississippi | 2,573,216 | 5 | 514,643 | 5.7 | -12% | 6 | 1 | 2,573,216 | 88% | 1,286,608 | 17.6% |
| 32 | Kansas | 2,477,574 | 4 | 619,394 | 5.5 | -27% | 5 | 1 | 2,477,574 | 73% | 1,238,787 | 18.3% |
| 33 | Arkansas | 2,350,725 | 4 | 587,681 | 5.2 | -23% | 5 | 1 | 2,350,725 | 77% | 1,175,363 | 19.3% |
| 34 | West Virginia | 1,793,477 | 3 | 597,826 | 4.0 | -24% | 4 | 1 | 1,793,477 | 76% | 896,739 | 25.3% |
| 35 | Utah | 1,722,850 | 3 | 574,283 | 3.8 | -21% | 4 | 1 | 1,722,850 | 79% | 861,425 | 26.3% |
| 36 | Nebraska | 1,578,385 | 3 | 526,128 | 3.5 | -14% | 3 | 0 | | 86% | 789,193 | 28.7% |
| 37 | New Mexico | 1,515,069 | 3 | 505,023 | 3.3 | -10% | 3 | 0 | | 90% | 757,535 | 29.9% |
| 38 | Maine | 1,227,928 | 2 | 613,964 | 2.7 | -26% | 3 | 1 | 1,227,928 | 74% | 613,964 | 36.9% |
| 39 | Nevada | 1,201,833 | 2 | 600,917 | 2.6 | -25% | 3 | 1 | 1,201,833 | 75% | 600,917 | 37.7% |
| 40 | New Hampshire | 1,109,252 | 2 | 554,626 | 2.4 | -18% | 2 | 0 | - | 82% | 554,626 | 40.9% |
| 41 | Hawaii | 1,108,229 | 2 | 554,115 | 2.4 | -18% | 2 | 0 | - | 82% | 554,115 | 40.9% |
| 42 | Idaho | 1,006,749 | 2 | 503,375 | 2.2 | -10% | 2 | 0 | - | 90% | 503,375 | 45.1% |
| 43 | Rhode Island | 1,003,464 | 2 | 501,732 | 2.2 | -10% | 2 | 0 | - | 90% | 501,732 | 45.2% |
| 44 | Montana | 799,065 | 1 | 799,065 | 1.8 | -43% | 2 | 1 | 799,065 | 57% | 399,533 | 56.8% |
| 45 | South Dakota | 696,004 | 1 | 696,004 | 1.5 | -35% | 2 | 1 | 696,004 | 65% | 348,002 | 65.2% |
| 46 | Delaware | 666,168 | 1 | 666,168 | 1.5 | -32% | 1 | 0 | | 68% | 333,084 | 68.1% |
| 47 | North Dakota | 638,800 | 1 | 638,800 | 1.4 | -29% | 1 | 0 | - | 71% | 319,400 | 71.0% |
| 48 | District of Columbia | 606,900 | 0 | | | | | | - | | 303,450 | 74.7% |
| 49 | Vermont | 562,758 | 1 | 562,758 | 1.2 | -19% | 1 | 0 | | 81% | 281,379 | 80.6% |
| — | Alaska | 550,043 | 1 | 550,043 | 1.2 | -18% | 1 | 0 | - | 82% | 275,022 | 82.5% |
| 50 | Wyoming | 453,588 | 1 | 453,588 | 1.0 | 0% | 1 | 0 | - | 100% | 226,794 | 100.0% |

**Comments:**

| | |
|---|---|
| 1 | Other than Wyoming, 49 states are under-represented between 10% (Rhode Island) and 43% (Montana). |
| 2 | 39 of the 50 states, or 95.7% of national population were under-represented by at least 1 seat, in a total of 110 seats at the House of Representatives. |
| 3 | Among the 39 states, the top 4 states - CA, TX, NY & FL - were under-represented by 14, 9, 7 and 6 seats, respectively. |
| 4 | The disparity per Senate seat is measured by comparing the population per senate seat for Wyoming and for every other state. For NY residents, it is (226,794/8,995,228 = 2.60%). |
| 5 | Hence in terms of vote value at the Senate, residents of the top 4 states - CA, TX, NY & FL - are weighted only 1.5%, 2.5%, 2.7% and 3.5% of Wyomingite, respectively. |

| | | | | | | | **9%** | | | | **33%** |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **State-by-State Allocation of Seats in House of Representatives** | | | | | | | | | | |
| | **The Nearest Integer Proposal** | | | | | | | | | | |
| **Census Data as of 2017:** | https://en.wikipedia.org/wiki/List_of_states_and_territories_of_the_United_States_by_population | | | | | | | | | | |
| | **Total** | 325,719,178 | 435 | 744,903 | 579,315 | **-45%** | 561 | 126 | 579,315 | **-23%** |
| **Index** | **State** | **Population 2016** | **# of House Reps Allocated** | **Population / HouseRep** | **# of HR By Base Population** | **Under-represented at the House %** | **Rounded to the Nearest Integer** | **# of HR Added** | **Population / HouseRep** | **Under-represented at the House %** |
| 1 | California | 39,536,653 | 53 | 745,975 | 68.25 | -22.3% | 68 | 15 | 581,421 | -0.4% |
| 2 | Texas | 28,304,596 | 36 | 786,239 | 48.86 | -26.3% | 49 | 13 | 577,645 | 0.3% |
| 3 | Florida | 20,984,400 | 27 | 777,200 | 36.22 | -25.5% | 36 | 9 | 582,900 | -0.6% |
| 4 | New York | 19,849,399 | 27 | 735,163 | 34.26 | -21.2% | 34 | 7 | 583,806 | -0.8% |
| 5 | Illinois | 12,802,023 | 18 | 711,224 | 22.10 | -18.5% | 22 | 4 | 581,910 | -0.4% |
| 6 | Pennsylvania | 12,805,537 | 18 | 711,419 | 22.10 | -18.6% | 22 | 4 | 582,070 | -0.5% |
| 7 | Ohio | 11,658,609 | 16 | 728,663 | 20.12 | -20.5% | 20 | 4 | 582,930 | -0.6% |
| 8 | Georgia | 10,429,379 | 14 | 744,956 | 18.00 | -22.2% | 18 | 4 | 579,410 | 0.0% |
| 9 | North Carolina | 10,273,419 | 13 | 790,263 | 17.73 | -26.7% | 18 | 5 | 570,746 | 1.5% |
| 10 | Michigan | 9,962,311 | 14 | 711,594 | 17.20 | -18.6% | 17 | 3 | 586,018 | -1.1% |
| 11 | New Jersey | 9,005,644 | 12 | 750,470 | 15.55 | -22.8% | 16 | 4 | 562,853 | 2.9% |
| 12 | Virginia | 8,470,020 | 11 | 770,002 | 14.62 | -24.8% | 15 | 4 | 564,668 | 2.6% |
| 13 | Washington | 7,405,743 | 10 | 740,574 | 12.78 | -21.8% | 13 | 3 | 569,673 | 1.7% |
| 14 | Arizona | 7,016,270 | 9 | 779,586 | 12.11 | -25.7% | 12 | 3 | 584,689 | -0.9% |
| 15 | Massachusetts | 6,859,819 | 9 | 762,202 | 11.84 | -24.0% | 12 | 3 | 571,652 | 1.3% |
| 16 | Tennessee | 6,715,984 | 9 | 746,220 | 11.59 | -22.4% | 12 | 3 | 559,665 | 3.5% |
| 17 | Indiana | 6,666,818 | 9 | 740,758 | 11.51 | -21.8% | 12 | 3 | 555,568 | 4.3% |
| 18 | Missouri | 6,113,532 | 8 | 764,192 | 10.55 | -24.2% | 11 | 3 | 555,776 | 4.2% |
| 19 | Maryland | 6,052,177 | 8 | 756,522 | 10.45 | -23.4% | 10 | 2 | 605,218 | -4.3% |
| 20 | Wisconsin | 5,795,483 | 8 | 724,435 | 10.00 | -20.0% | 10 | 2 | 579,548 | 0.0% |
| 21 | Colorado | 5,607,154 | 7 | 801,022 | 9.68 | -27.7% | 10 | 3 | 560,715 | 3.3% |
| 22 | Minnesota | 5,576,606 | 8 | 697,076 | 9.63 | -16.9% | 10 | 2 | 557,661 | 3.9% |
| 23 | South Carolina | 5,024,369 | 7 | 717,767 | 8.67 | -19.3% | 9 | 2 | 558,263 | 3.8% |
| 24 | Alabama | 4,874,747 | 7 | 696,392 | 8.41 | -16.8% | 8 | 1 | 609,343 | -4.9% |
| 25 | Louisiana | 4,684,333 | 6 | 780,722 | 8.09 | -25.8% | 8 | 2 | 585,542 | -1.1% |
| 26 | Kentucky | 4,454,189 | 6 | 742,365 | 7.69 | -22.0% | 8 | 2 | 556,774 | 4.0% |
| 27 | Oregon | 4,142,776 | 5 | 828,555 | 7.15 | -30.1% | 7 | 2 | 591,825 | -2.1% |
| 28 | Oklahoma | 3,930,864 | 5 | 786,173 | 6.79 | -26.3% | 7 | 2 | 561,552 | 3.2% |
| 29 | Connecticut | 3,588,184 | 5 | 717,637 | 6.19 | -19.3% | 6 | 1 | 598,031 | -3.1% |
| 30 | Iowa | 3,145,711 | 4 | 786,428 | 5.43 | -26.3% | 5 | 1 | 629,142 | -7.9% |
| 31 | Utah | 3,101,833 | 4 | 775,458 | 5.35 | -25.3% | 5 | 1 | 620,367 | -6.6% |
| 32 | Mississippi | 2,984,100 | 4 | 746,025 | 5.15 | -22.3% | 5 | 1 | 596,820 | -2.9% |
| 33 | Arkansas | 3,004,279 | 4 | 751,070 | 5.18 | -22.9% | 5 | 1 | 600,856 | -3.6% |
| 34 | Nevada | 2,998,039 | 4 | 749,510 | 5.18 | -22.7% | 5 | 1 | 599,608 | -3.4% |
| 35 | Kansas | 2,913,123 | 4 | 728,281 | 5.03 | -20.5% | 5 | 1 | 582,625 | -0.6% |
| 36 | New Mexico | 2,088,070 | 3 | 696,023 | 3.60 | -16.8% | 4 | 1 | 522,018 | 11.0% |
| 37 | Nebraska | 1,920,076 | 3 | 640,025 | 3.31 | -9.5% | 3 | 0 | 640,025 | -9.5% |
| 38 | West Virginia | 1,815,857 | 3 | 605,286 | 3.13 | -4.3% | 3 | 0 | 605,286 | -4.3% |
| 39 | Idaho | 1,716,943 | 2 | 858,472 | 2.96 | -32.5% | 3 | 1 | 572,314 | 1.2% |
| 40 | Hawaii | 1,427,538 | 2 | 713,769 | 2.46 | -18.8% | 2 | 0 | 713,769 | -18.8% |
| 41 | New Hampshire | 1,342,795 | 2 | 671,398 | 2.32 | -13.7% | 2 | 0 | 671,398 | -13.7% |
| 42 | Maine | 1,335,907 | 2 | 667,954 | 2.31 | -13.3% | 2 | 0 | 667,954 | -13.3% |
| 43 | Rhode Island | 1,059,639 | 2 | 529,820 | 1.83 | 9.3% | 2 | 0 | 529,820 | 9.3% |
| 44 | Montana | 1,050,493 | 1 | 1,050,493 | 1.81 | -44.9% | 2 | 1 | 525,247 | 10.3% |
| 45 | Delaware | 961,939 | 1 | 961,939 | 1.66 | -39.8% | 2 | 1 | 480,970 | 20.4% |
| 46 | South Dakota | 869,666 | 1 | 869,666 | 1.50 | -33.4% | 2 | 1 | 434,833 | 33.2% |
| 47 | North Dakota | 755,393 | 1 | 755,393 | 1.30 | -23.3% | 1 | 0 | 755,393 | -23.3% |
| 48 | Alaska | 739,795 | 1 | 739,795 | 1.28 | -21.7% | 1 | 0 | 739,795 | -21.7% |
| 49 | District of Columbia | 693,972 | | | | | 0 | 0 | | |
| 50 | Vermont | 623,657 | 1 | 623,657 | 1.08 | -7.1% | 1 | 0 | 623,657 | -7.1% |
| 51 | Wyoming | 579,315 | 1 | 579,315 | 1.00 | 0.0% | 1 | 0 | 579,315 | 0.0% |

| Comments | |
|---|---|
| 1 | Currently variances in representation range from under 45% to over 9%, clearly neither equitable nor constitutional. |
| 2 | Wyoming has the least population, hence 579,315 is the divisor. |
| 3 | Each state population divides by the divisor. For example, NY opulation (19,849,399)/(579,315)=34.26 |
| 4 | The quotient then rounds to the nearest integer. For example, NY's quotient 34.26 rounds to 34. |
| 5 | Hence NY's number of seats would increase from 27 to 34, then its under-representation by 21.2% would be improved to 0.8%. |
| 6 | This "Nearest Integer" approach will add 126 additional seats to a total of 561, reduce under-representation to < 5% for the top 29 populous states. |
| 7 | However, representation for many less populous states remains unfair. For example, North Dakota still under-represented by 23.3%. |
| 8 | Meanwhile, South Dakota goes from under-represented 33.4% to under-represented 33.2%. |
| 9 | Also worth noted, Rhode Island remains over-represented at 9.3%, while Alaska under-represented at 21.7%. |
| 10 | Under this proposal, variances in representation range from under 23% to over 33%, clearly still neither equitable nor constitutional. |

# Appendix E

## State-by-State Allocation of Seats in House of Representatives
### The Nearest Tenth Digit Proposal

**Census Data as of 2017:** https://en.wikipedia.org/wiki/List_of_states_and_territories_of_the_United_States_by_population

| Index | State | Population 2016 | # of House Reps Allocated | Population / HouseRep | # of HR By Base Population | Under-represented at the House % | Rounded to the Nearest Tenth Digit | # of Members with 1 Vote | # of Members with 1.1~1.9 Vote | Population / HouseRep | Under-represented at the House % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 9.3% | 497.0 | 64.1 | 107 | | 2.4% |
| | **Total** | 325,719,178 | 435 | 744,903 | 579,315 | -44.9% | 561.1 | 497 | 45 | 542 | -1.6% |
| 1 | California | 39,536,653 | 53 | 745,975 | 68.247 | -22.3% | 68.2 | 67 | 1.2 | 579,716 | -0.1% |
| 2 | Texas | 28,304,596 | 36 | 786,239 | 48.859 | -26.3% | 48.9 | 47 | 1.9 | 578,826 | 0.1% |
| 3 | Florida | 20,984,400 | 27 | 777,200 | 36.223 | -25.5% | 36.2 | 35 | 1.2 | 579,680 | -0.1% |
| 4 | New York | 19,849,399 | 27 | 735,163 | 34.264 | -21.2% | 34.3 | 33 | 1.3 | 578,700 | 0.1% |
| 5 | Illinois | 12,802,023 | 18 | 711,224 | 22.099 | -18.5% | 22.1 | 21 | 1.1 | 579,277 | 0.0% |
| 6 | Pennsylvania | 12,805,537 | 18 | 711,419 | 22.105 | -18.6% | 22.1 | 21 | 1.1 | 579,436 | 0.0% |
| 7 | Ohio | 11,658,609 | 16 | 728,663 | 20.125 | -20.5% | 20.1 | 19 | 1.1 | 580,030 | -0.1% |
| 8 | Georgia | 10,429,379 | 14 | 744,956 | 18.003 | -22.2% | 18.0 | 18 | 0.0 | 579,410 | 0.0% |
| 9 | North Carolina | 10,273,419 | 13 | 790,263 | 17.734 | -26.7% | 17.7 | 16 | 1.7 | 580,419 | -0.2% |
| 10 | Michigan | 9,962,311 | 14 | 711,594 | 17.197 | -18.6% | 17.2 | 16 | 1.2 | 579,204 | 0.0% |
| 11 | New Jersey | 9,005,644 | 12 | 750,470 | 15.545 | -22.8% | 15.5 | 14 | 1.5 | 581,009 | -0.3% |
| 12 | Virginia | 8,470,020 | 11 | 770,002 | 14.621 | -24.8% | 14.6 | 13 | 1.6 | 580,138 | -0.1% |
| 13 | Washington | 7,405,743 | 10 | 740,574 | 12.784 | -21.8% | 12.8 | 11 | 1.8 | 578,574 | 0.1% |
| 14 | Arizona | 7,016,270 | 9 | 779,586 | 12.111 | -25.7% | 12.1 | 11 | 1.1 | 579,857 | -0.1% |
| 15 | Massachusetts | 6,859,819 | 9 | 762,202 | 11.841 | -24.0% | 11.8 | 10 | 1.8 | 581,341 | -0.3% |
| 16 | Tennessee | 6,715,984 | 9 | 746,220 | 11.593 | -22.4% | 11.6 | 10 | 1.6 | 578,964 | 0.1% |
| 17 | Indiana | 6,666,818 | 9 | 740,758 | 11.508 | -21.8% | 11.5 | 10 | 1.5 | 579,723 | -0.1% |
| 18 | Missouri | 6,113,532 | 8 | 764,192 | 10.553 | -24.2% | 10.6 | 9 | 1.6 | 576,748 | 0.4% |
| 19 | Maryland | 6,052,177 | 8 | 756,522 | 10.447 | -23.4% | 10.4 | 9 | 1.4 | 581,940 | -0.5% |
| 20 | Wisconsin | 5,795,483 | 8 | 724,435 | 10.004 | -20.0% | 10.0 | 10 | 0.0 | 579,548 | 0.0% |
| 21 | Colorado | 5,607,154 | 7 | 801,022 | 9.679 | -27.7% | 9.7 | 8 | 1.7 | 578,057 | 0.2% |
| 22 | Minnesota | 5,576,606 | 8 | 697,076 | 9.626 | -16.9% | 9.6 | 8 | 1.6 | 580,896 | -0.3% |
| 23 | South Carolina | 5,024,369 | 7 | 717,767 | 8.673 | -19.3% | 8.7 | 7 | 1.7 | 577,514 | 0.3% |
| 24 | Alabama | 4,874,747 | 7 | 696,392 | 8.415 | -16.8% | 8.4 | 7 | 1.4 | 580,327 | -0.2% |
| 25 | Louisiana | 4,684,333 | 6 | 780,722 | 8.086 | -25.8% | 8.1 | 7 | 1.1 | 578,313 | 0.2% |
| 26 | Kentucky | 4,454,189 | 6 | 742,365 | 7.689 | -22.0% | 7.7 | 6 | 1.7 | 578,466 | 0.1% |
| 27 | Oregon | 4,142,776 | 5 | 828,555 | 7.151 | -30.1% | 7.2 | 6 | 1.2 | 575,386 | 0.7% |
| 28 | Oklahoma | 3,930,864 | 5 | 786,173 | 6.785 | -26.3% | 6.8 | 5 | 1.8 | 578,068 | 0.2% |
| 29 | Connecticut | 3,588,184 | 5 | 717,637 | 6.194 | -19.3% | 6.2 | 5 | 1.2 | 578,739 | 0.1% |
| 30 | Iowa | 3,145,711 | 4 | 786,428 | 5.430 | -26.3% | 5.4 | 4 | 1.4 | 582,539 | -0.6% |
| 31 | Utah | 3,101,833 | 4 | 775,458 | 5.354 | -25.3% | 5.4 | 4 | 1.4 | 574,414 | 0.9% |
| 32 | Mississippi | 2,984,100 | 4 | 746,025 | 5.151 | -22.3% | 5.2 | 4 | 1.2 | 573,865 | 0.9% |
| 33 | Arkansas | 3,004,279 | 4 | 751,070 | 5.186 | -22.9% | 5.2 | 4 | 1.2 | 577,746 | 0.3% |
| 34 | Nevada | 2,998,039 | 4 | 749,510 | 5.175 | -22.7% | 5.2 | 4 | 1.2 | 576,546 | 0.5% |
| 35 | Kansas | 2,913,123 | 4 | 728,281 | 5.029 | -20.5% | 5.0 | 5 | 0.0 | 582,625 | -0.1% |
| 36 | New Mexico | 2,088,070 | 3 | 696,023 | 3.604 | -16.8% | 3.6 | 2 | 1.6 | 580,019 | -0.1% |
| 37 | Nebraska | 1,920,076 | 3 | 640,025 | 3.314 | -9.5% | 3.3 | 2 | 1.3 | 581,841 | -0.4% |
| 38 | West Virginia | 1,815,857 | 3 | 605,286 | 3.134 | -4.3% | 3.1 | 2 | 1.1 | 585,760 | -1.1% |
| 39 | Idaho | 1,716,943 | 2 | 858,472 | 2.964 | -32.5% | 3.0 | 3 | 0.0 | 572,314 | 1.2% |
| 40 | Hawaii | 1,427,538 | 2 | 713,769 | 2.464 | -18.8% | 2.5 | 1 | 1.5 | 571,015 | 1.5% |
| 41 | New Hampshire | 1,342,795 | 2 | 671,398 | 2.318 | -13.7% | 2.3 | 1 | 1.3 | 583,824 | -0.8% |
| 42 | Maine | 1,335,907 | 2 | 667,954 | 2.306 | -13.3% | 2.3 | 1 | 1.3 | 580,829 | -0.3% |
| 43 | Rhode Island | 1,059,639 | 2 | 529,820 | 1.829 | 9.3% | 1.8 | 0 | 1.8 | 588,688 | -1.6% |
| 44 | Montana | 1,050,493 | 1 | 1,050,493 | 1.813 | -44.9% | 1.8 | 0 | 1.8 | 583,607 | -0.7% |
| 45 | Delaware | 961,939 | 1 | 961,939 | 1.660 | -39.8% | 1.7 | 0 | 1.7 | 566,846 | 2.4% |
| 46 | South Dakota | 869,666 | 1 | 869,666 | 1.501 | -33.4% | 1.5 | 0 | 1.5 | 579,777 | -0.1% |
| 47 | North Dakota | 755,393 | 1 | 755,393 | 1.304 | -23.3% | 1.3 | 0 | 1.3 | 581,072 | -0.3% |
| 48 | Alaska | 739,795 | 1 | 739,795 | 1.277 | -21.7% | 1.3 | 0 | 1.3 | 569,073 | 1.8% |
| 49 | District of Columbia | 693,972 | | | | | | | | | |
| 50 | Vermont | 623,657 | 1 | 623,657 | 1.077 | -7.1% | 1.1 | 0 | 1.1 | 566,961 | 2.2% |
| 51 | Wyoming | 579,315 | 1 | 579,315 | 1.000 | 0.0% | 1.0 | 1 | 0.0 | 579,315 | 0.0% |

**Comments**

1. Wyoming has the least population, hence 579,315 is the divisor.
2. Each state population divides by the divisor. For example, NY population (19,849,399) / (579,315) = 34.264.
3. The quotient rounds to the nearest tenth digit. For example, NY's quotient 34.264 rounds to 34.3
4. NY's number of seats increases from currently 27 to 34.3, i.e. 33 members have 1 vote each, the 34th member has a vote of 1.3 from a larger district.
5. Under this proposal, all significant unequal representations remained in the first proposal are practically resolved.
6. Montana from under 44.9% to under 0.7%, North Dakota from under 23.3% to under 0.3%, Alaska from under 21.7% to under over 1.8%,
7. South Dakota from under 33.4% to over under 0.1%, while Rhode Island from over 9.3% to under 1.6%.
8. Under this proposal, only 107 additional members will be added to the current 435-body.
9. The 542 members will have a total vote of "561.1" with "280.6" being the simple majority.
10. Among the 542 members, 497 have 1 vote each, and 45 have a vote of 1.1 to 1.9, representing a larger district from one of the big cities in each state
11. Under this proposal, the variance of representation ranges from under 1.6% to over 2.4%, within +/-3%, a near precision.