UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
EQUAL VOTE AMERICA CORP., LEWIS Y.
LIU,

      Plaintiffs,

    -v-

CONGRESS; NANCY PELOSI, in her official
capacity as the Speaker of the House of the
Representatives; KEVIN MCCARTHY, in his
official capacity as the Minority Leader of the
House; MITCH McCONNELL, in his official
capacity as the Senate Majority Leader; and
CHARLES (CHUCK) SCHUMER, in his official
capacity as the Senate Minority Leader,

      Defendants.
------------------------------------------------------------ X

19 Civ. 311 (CM)

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT UNDER RULE 12(B)(1), OR, ALTERNATIVELY, UNDER RULE 12(B)(6) AND RULE 12(B)(2)

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2715
Facsimile: (212) 637-2717

STEVEN J. KOCHEVAR
Assistant United States Attorney
  – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND ............................................................................................................................. 2

    I.    The Apportionment of Seats in the United States House of Representatives ................... 2

    II.    The Amended Complaint ................................................................................................ 3

ARGUMENT .................................................................................................................................. 4

    I.    The Court Lacks Subject Matter Jurisdiction Over This Action ....................................... 4

        A.    The Supreme Court Has Held that the Federal Courts Lack Jurisdiction Over Challenges to the Number of Representatives in the House ............................................................................. 5

        B.    Plaintiffs Lack Article III Standing ............................................................................. 5

        C.    Sovereign Immunity Deprives the Court of Jurisdiction Over Plaintiffs' Claims ...... 10

        D.    The Speech or Debate Clause Deprives this Court of Jurisdiction Over Plaintiffs' Claims ....... 11

    II.    Alternatively, Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6) and Rule 12(b)(2) ... 12

        A.    Plaintiffs Fail to State a Claim ................................................................................... 12

        B.    The Court Lacks Personal Jurisdiction Over Three Individual Defendants .............. 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Apple v. Glenn*,
    183 F.3d 477 (6th Cir. 1999) ................................................................................................ 14
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 13
*Becker v. Fed. Election Commission*,
    230 F.3d 381 (1st Cir. 2000) ................................................................................................ 7
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 12
*Berg v. Obama*,
    586 F.3d 234 (3d Cir. 2009) ................................................................................................. 7
*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011) ............................................................................................ 5, 6
*Clemons v. Department of Commerce*,
    562 U.S. 1105 (2010) ........................................................................................................... 5
*Clemons v. Department of Commerce*,
    710 F. Supp. 2d 570 (N.D. Miss. 2010) ............................................................................... 5
*Cohen v. Obama*,
    2008 WL 5191864 (D.D.C. Dec. 11, 2008) ......................................................................... 8
*Collins v. Merrill*,
    No. 16 Civ. 9375 (RJS), 2016 WL 7176651 (S.D.N.Y. Dec. 7, 2016) ................................. 7
*Common Cause v. Biden*,
    748 F.3d 1280 (D.C. Cir. 2014) ......................................................................................... 12
*Crist v. Comm'n on Presidential Debates*,
    262 F.3d 193 (2d Cir. 2001) ................................................................................................. 7
*Damato v. Rell*,
    2010 WL 2475666 (D. Conn. June 14, 2010) .................................................................... 14
*De Masi v. Schumer*,
    608 F. Supp. 2d 516 (S.D.N.Y. 2009) ................................................................................ 14
*Dep't of Comm. v. U.S. House of Representatives*,
    525 U.S. 316 (2012) ............................................................................................................. 8
*Dotson v. Griesa*,
    398 F.3d 156 (2d Cir. 2005) ............................................................................................... 10
*FDIC v. Meyer*,
    510 U.S. 471 (1994) ........................................................................................................... 11
*Fields v. Office of Eddie Bernice Johnson*,
    459 F.3d 1 (D.C. Cir. 2006) ............................................................................................... 11

*Friends of the Earth v. Laidlaw Environmental Servs. (TOC)*,
  528 U.S. 167 (2000) ................................................................................................ 6, 9
*Gravel v. United States*,
  408 U.S. 606 (1972) ..................................................................................................... 11
*Hassan v. United States*,
  441 F. App'x 10 (2d Cir. 2011) ..................................................................................... 7
*Hearst v. Black*,
  87 F.2d 68 (D.C. Cir. 1936) ......................................................................................... 10
*Hoffman v. Jeffords,*
  175 F. Supp. 2d 49 (D.D.C. 2001) ................................................................................ 9
*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ....................................................................................................... 6
*In re Terrorist Attacks on Sept. 11,
  2001*, 714 F.3d 659 (2d Cir. 2013) ............................................................................. 14
*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ..................................................................................................... 14
*LaVergne v. Bryson*,
  497 Fed. App'x 219 (3d Cir. 2012) ............................................................................... 8
*Liu v. Ryan,*
  728 Fed. App'x 92 (2d Cir. 2018) ................................................................................. 7
*Maarawi v. U.S. Congress*,
  24 F. App'x 43 (2d Cir. 2001) ..................................................................................... 11
*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ........................................................................................ 11
*Mississippi v. Johnson*,
  71 U.S. (4 Wall.) 475 (1866) ....................................................................................... 10
*Morrison v. Nat'l Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) .......................................................................................... 5
*N.Y. Civil Liberties Union v. N.Y. Transit Auth.*,
  684 F.3d 286 (2d Cir. 2012) .......................................................................................... 6
*Raines v. Byrd*,
  521 U.S. 811 (1997) ....................................................................................................... 9
*Richards v. Harper*,
  864 F.2d 85 (9th Cir. 1988) ......................................................................................... 14
*Robinson v. Overseas Military Sales Corp.*,
  21 F.3d 502 (2d Cir. 1994) ............................................................................................ 4
*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ............................................................................................ 9
*SEC v. Comm. on Ways & Means of the U.S. House of,
  Reps.*, 161 F. Supp. 3d 199 (S.D.N.Y. 2015) ........................................................ 11, 12

*Subramaniam v. Beal*,
    2013 WL 5462339 (D. Or. Sept. 27, 2013) ............................................................. 14
*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................................. 6
*Supreme Court of Virginia v. Consumers Union of U. S., Inc.*,
    446 U.S. 719 (1980) ............................................................................................... 12
*U.S. Dep't of Commerce v. Montana*,
    503 U.S. 442 (1992) ..................................................................................... 2, 3, 8, 13
*United States v. Mitchell*,
    445 U.S. 535 (1980) ......................................................................................... 10, 11
*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................................. 8

**Statutes**

2 U.S.C. § 2a ............................................................................................................. 2, 3, 13

**Rules**

Fed. R. Civ. P. 15(a) ......................................................................................................... 6

**Constitutional Provisions**

U.S Const., art. I, § 6 ...................................................................................................... 11
U.S Const., art. I, § 7 ...................................................................................................... 10

Defendants Nancy Pelosi, Speaker of the United States House of Representatives, Kevin McCarthy, House Minority Leader, Mitch McConnell, Majority Leader of the United States Senate, and Charles Schumer, Senate Minority Leader, by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), or, alternatively, for failure to state a claim under Rule 12(b)(6) and for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## **PRELIMINARY STATEMENT**

Plaintiffs ask this Court to hold unconstitutional the statutory method of apportioning seats in the United States House of Representatives (the "House") and to hold Congress in contempt—and the Senate unconstitutional—if Congress does not adopt a method of apportionment advocated by plaintiffs. The Court should dismiss plaintiffs' amended complaint for several reasons, including because this Court lacks jurisdiction and because the Supreme Court has already upheld Congress's chosen method of apportionment against constitutional attack.

This Court lacks jurisdiction over plaintiffs' claims for multiple reasons. First, plaintiffs lack standing. They have failed to allege any injury that distinguishes them from the vast majority of citizens. They have also failed to allege that any possible alleged harm was caused by the individual defendants' actions. Moreover, to the extent plaintiffs have alleged any harms, the relief they seek here would not redress them, and would instead freeze the present allocation of House seats in place.

Second, plaintiffs' claims are barred by sovereign immunity, as well as the Speech or Debate Clause. Congress has not waived its sovereign immunity from plaintiffs' claims. In addition, the Speech or Debate Clause protects defendants from the present suit.

Further, plaintiffs fails to state a claim because the Supreme Court has upheld the present method of apportioning seats in the House, known as the method of equal proportions and set out in 2 U.S.C. § 2a. In *U.S. Dep't of Commerce v. Montana*, 503 U.S. 442, 447–48 (1992), the Supreme Court upheld the method of equal proportions and 2 U.S.C. § 2a against a constitutional challenge brought by the state of Montana. Even if the Court had jurisdiction, *Montana* would control the present case and foreclose plaintiffs' claims.

Finally, this Court lacks personal jurisdiction over three of the four individual defendants. Only Leader Schumer is a legislator from New York. Plaintiffs have not alleged sufficient contacts by the three other individual defendants with the Southern District of New York.

Plaintiffs' amended complaint therefore should be dismissed pursuant to Rules 12(b)(1), (2) (as to defendants Speaker Pelosi, Leader McCarthy, and Leader McConnell), and (6).

## BACKGROUND

### I.     The Apportionment of Seats in the United States House of Representatives

Under the Constitution, Congress apportions seats in the House. The Constitution imposes three specific requirements on the apportionment of House seats: "The number of Representatives shall not exceed one for every 30,000 persons; each State shall have at least one Representative; and district boundaries may not cross state lines." *U.S. Dep't of Commerce v. Montana*, 503 U.S. 442, 447–48 (1992). Since the adoption of the Constitution, Congress has employed various methods to apportion House seats. *See id.* at 448–52 (explaining and placing in historical context the different apportionment methods utilized by Congress). "In [1911]

Congress . . . passed legislation that ultimately fixed the number of Representatives at 435." *Id.* at 451 & n.24 (citing 37 Stat. 13; 72 Stat. 345; 73 Stat. 8). In 1941, upon the recommendation of a committee of the National Academy of Sciences, Congress adopted and made self-executing the "method of equal proportions" to apportion House seats—the method still used today. 2 U.S.C. § 2a; *Montana*, 503 U.S. at 451–52. Of the various methods considered by the committee, "the method of equal proportions minimized the relative difference both between the size of congressional districts and between the number of Representatives per person," where the "[r]elative difference between two numbers consists of subtracting the smaller number from the larger number and then dividing the result by the smaller number." *Id.* at 454-55 & n.29 (footnote omitted). "In comparison with the other four methods considered [by the committee], [the method of equal proportions] occupied an intermediate position in terms of favoring small States over large States." *Id.* at 455. After each decennial Census, the Executive calculates the number of Representatives allocated to each state and transmits the allocation to Congress. 2 U.S.C. § 2a.

## II. The Amended Complaint

The amended complaint describes plaintiff Lewis Liu only as a resident and registered voter in the state of New York. *See* Amended Complaint ("AC"), at 1, 5, ECF No. 9. The amended complaint describes the other plaintiff, Equal Vote America Corp. (the "organizational plaintiff"), only as "a Not-for-Profit Corporation with the mission of educating the general public on voting rights, and promoting voter participation in the election process without supporting any particular political party or candidate." *Id.* at 1. The amended complaint also states that "[i]n this case, Equal Vote America Corp., represents a group of eligible voters." *Id.* Otherwise, the

amended complaint contains no allegations or statements specifically concerning Equal Vote America Corp. *See generally* AC.

The amended complaint does not contain factual allegations concerning any discrete set of events or actions taken by defendants. Instead, the amended complaint presents, *inter alia*, an account of the design and adoption of the Constitution and methods of apportioning House seats, AC at 7–9; a critical perspective on the current method of apportioning House seats, *id.* at 9–18, and a proposal for new methods of apportionment, *id.* at 23–26. Specifically, the amended complaint advocates for an increase in the number of seats in the House and the adoption of a different method of apportioning House seats between states, on the grounds that most states are effectively underrepresented under the current method of apportionment. *See generally* AC. With respect to relief, the amended complaint calls upon this Court to declare the Apportionment Acts of 1911, 1929, and 1941 unconstitutional and to hold Congress in contempt of court—and the Senate unconstitutional—if Congress does not pass a law allocating House seats according to plaintiff's proposed method. *See* AC at 27.

## ARGUMENT

### I. The Court Lacks Subject Matter Jurisdiction Over This Action

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff carries the burden of establishing that the Court has subject matter jurisdiction to adjudicate plaintiff's complaint. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting

it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks, citation, and brackets omitted).

      A.      <u>The Supreme Court Has Held that the Federal Courts Lack Jurisdiction Over Challenges to the Number of Representatives in the House</u>

As an initial matter, to the extent plaintiffs have challenged the number of seats in the House, this Court lacks subject matter jurisdiction over their claims, for the reasons explained below in the context of all of plaintiff's claims, and also for the additional reason that the Supreme Court has expressly held that the federal courts lack jurisdiction over a challenge to the number of seats in the House. In *Clemons v. Department of Commerce*, 562 U.S. 1105 (2010), the Supreme Court summarily vacated and remanded a judgment from a three-judge panel sitting in the Northern District of Mississippi that had concluded that it had jurisdiction to hear voters' claim that the Constitution required an increase in the number of House seats—although the three-judge panel rejected the challenge on the merits, *see Clemons v. Department of Commerce*, 710 F. Supp. 2d 570 (N.D. Miss. 2010). The voters' challenge in *Clemons* appears highly similar to plaintiffs' claims in the present case. *Compare id. with* AC. The Supreme Court did not explain its decision to vacate and remand, providing only "instructions to dismiss the complaint for lack of jurisdiction." *Clemons*, 562 U.S. at 1105. For the reasons that follow, the Supreme Court's summary holding in *Clemons* should apply to the present case.

      B.      <u>Plaintiffs Lack Article III Standing</u>

The Court should dismiss plaintiffs' amended complaint in its entirety for lack of jurisdiction because plaintiffs have failed to establish Article III standing. "[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted).

5

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth v. Laidlaw Environmental Servs. (TOC)*, 528 U.S. 167, 180–81 (2000). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." *Cacchillo*, 638 F.3d at 404. To bring claims on its own behalf, an organizational plaintiff such as Equal Vote America Corp. must "meet the same standing test that applies to individuals," *N.Y. Civil Liberties Union v. N.Y. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).[1]

Plaintiffs have failed to allege any of the necessary elements of standing. First, plaintiffs have failed to establish injury. The Second Circuit's holding in a similar lawsuit filed by Liu—challenging the constitutionality of the Electoral College—explains why plaintiffs also do not have standing here:

> An injury in fact must be "concrete and particularized," meaning that it affects the plaintiff in a personal and individual way and is "actual or imminent, not conjectural or hypothetical." A voter fails to present an injury in fact when the

---

[1] Equal Vote America Corp. does not have standing to bring claims on behalf of any of its constituent members, an arrangement known as "associational standing." *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). To do so, Equal Vote America Corp. would need, *inter alia*, to identify, by name, at least one member with standing. *See id.*; *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009). It has not done so. The amended complaint does not even allege that Equal Vote America Corp. has constituent members in the sense required to establish associational standing: instead, plaintiffs allege that Equal Vote America Corp. "represents a group of eligible voters, led by Lewis Y. LIU." AC at 1. Even if the Court were to construe this as a statement that Liu and other eligible voters are members of Equal Vote America Corp, this would not establish associational standing because plaintiffs have failed to establish that Liu—or any other unidentified "eligible voter[]"—has standing to assert plaintiffs' claims, for the reasons set forth in this brief. In addition, on April 25, 2019, plaintiffs filed a number of unsworn documents styled "affidavits" putatively from individuals wishing to join this case as parties. *See* ECF No. 20. A complaint may not be amended in this manner after plaintiffs have already amended their complaint once. *See* Fed. R. Civ. P. 15(a). Even were the Court to take the affidavits into account, they do not establish that any of the individuals identified therein have standing. Indeed, each "affiant" would lack standing for the same reasons Liu and Equal Vote America Corp. lack standing.

> alleged harm is abstract and widely shared or is only derivative of a harm experienced by a candidate or other actor. Here, Liu admits that his alleged injury is widely shared by the vast majority of Americans . . . .

*Liu v. Ryan*, 724 Fed. App'x 92, 93 (2d Cir. 2018) (citations and quotation marks omitted). In the present case, Liu has again admitted that the alleged injury is widely shared by the vast majority of Americans: the amended complaint repeatedly states that "over 95% of Americans" suffer from the alleged harms. *See, e.g.*, AC at 14, 15, 16, 17, 18, 19. And although the amended complaint offers historical observations and policy analysis concerning the apportionment of House seats, the complaint describes no stake *for plaintiffs* in the constitutional issues as raised aside from Liu's status as an individual citizen and voter and a vague statement of Equal Vote America Corp.'s mission. *See* AC at 1. Courts have routinely dismissed actions alleging such "abstract and widely shared" harm, particularly in the context of election-related challenges. *Liu*, 728 Fed. App'x at 93; *see, e.g.*, *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001) (affirming dismissal, on standing grounds, of suit seeking broader access by candidates to national debates); *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009) (rejecting standing of individual voter to challenge eligibility of Barack Obama to serve as President); *Becker v. Fed. Election Commission*, 230 F.3d 381, 389-390 (1st Cir. 2000) (rejecting standing of third-party voters to challenge funding of presidential debates in context of Ralph Nader's candidacy for President); *Collins v. Merrill*, No. 16 Civ. 9375, 2016 WL 7176651, at *2 (S.D.N.Y. Dec. 7, 2016) (dismissing New York voter's constitutional challenge to Electoral College on standing grounds) (collecting cases). Put simply, plaintiffs' amended "complaint does virtually nothing to distinguish [plaintiffs] from the millions of other . . . citizens all of whom are similarly impacted by" the present system of apportionment. *Hassan v. United States*, 441 F. App'x 10, 12 (2d Cir. 2011) (holding that plaintiff lacked standing to challenge constitutional

requirement that President be natural born citizen); *see also Cohen v. Obama*, No. 08 2150, 2008 WL 5191864, at *1 (D.D.C. Dec. 11, 2008) ("Where, as here, plaintiff's stake is no greater and his status no more differentiated than that of millions of other voters, his harm is too vague and its effects too attenuated to confer standing on any and all voters.") (brackets, ellipsis, and internal quotation marks omitted), *aff'd*, 332 F. App'x 640 (D.C. Cir. 2009); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). Accordingly, plaintiffs have failed to adequately allege injury.

The Supreme Court's decisions adjudicating challenges to the apportionment of House seats on the merits do not help plaintiffs establish injury. *See, e.g.*, *Dep't of Comm. v. U.S. House of Representatives*, 525 U.S. 316, 328–43 (2012) (voters' interest in preventing dilution of their votes supported standing to challenge the use of statistical sampling in the Census); *Montana*, 503 U.S. 442 (resolving on merits Montana's challenge to the use of the "method of equal proportions" to apportion House seats). As the Third Circuit explained in the context of claims similar to those asserted in the present case, the Supreme Court has held that the "'expected loss of a Representative to the United States Congress' based on redistricting ordered under [2 U.S.C.] § 2a" can establish voters' standing, but this injury is not necessarily present when a plaintiff proposes a nationwide increase in the number of seats in the House. *LaVergne v. Bryson*, 497 Fed. App'x 219, 221 (3d Cir. 2012) (quoting *Dep't of Comm.*, 525 U.S. at 331). In the present case, plaintiffs propose increasing the number of House seats nationwide, *see* AC at 23–26, and do not allege that any voter is in danger of having her vote diluted through the loss of a seat in the House. Accordingly, the Supreme Court precedents allowing certain challenges

to the apportionment of House seats to proceed to the merits do not help plaintiffs establish injury in the present case.[2]

Second, plaintiffs have failed to establish the second required element of standing, traceability, for the individual defendants. "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and [plaintiff's] injury." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (internal quotation marks omitted). The individual defendants, the present leaders of each political party in the House and Senate, did not propose or pass any relevant part of the apportionment statutes challenged by plaintiffs. *Cf. Hoffman v. Jeffords,* 175 F. Supp. 2d 49, 58 (D.D.C. 2001) (dismissing suit against Senator for changing political parties, including because "his single vote could not by itself defeat or result in the enactment of any legislation"), *aff'd*, No. 02-5006, 2002 WL 1364311, at *1 (D.C. Cir. May 6, 2002); *see also Raines v. Byrd*, 521 U.S. 811, 830 n.11 (1997) (noting that it was "far from clear" that individual members of Congress could show "fairly traceable" injury arising out of legislative actions of their colleagues in passing act plaintiffs-congresspersons disfavored). Accordingly, none of the individual defendants' conduct is traceable to plaintiffs' alleged harms.

Third, plaintiffs have failed to establish the third element of standing, redressability. To satisfy the redressability requirement, it must be "likely, as opposed to merely speculative, that [a plaintiff's] injury will be redressed by a favorable decision." *Laidlaw*, 528 U.S. at 181. Plaintiffs ask this Court to hold the present scheme of apportionment unconstitutional and hold Congress in contempt—and the Senate unconstitutional—if it fails to pass an apportionment scheme approved by plaintiffs. *See* AC at 23–26. Even if the Court had the power to grant such

---

[2] In the event the Court concludes that standing does exist in the present case, *Montana* forecloses plaintiffs' claims on the merits. *See infra*.

9

relief—it does not because of sovereign immunity and the Speech or Debate Clause, *see infra*—such relief would not redress plaintiffs' alleged harms. Indeed, the only certain effect of plaintiffs' requested relief would be to freeze in place the present allocation of House seats. Otherwise, this Court cannot direct Congress to pass legislation, and it would be speculative to conclude Congress would pass plaintiffs' desired legislation were it held in contempt or the Senate held unconstitutional. *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 500 (1866) ("The Congress is the legislative department of the government; the President is the executive department. Neither can be restrained in its action by the judicial department. . . ."); *Hearst v. Black*, 87 F.2d 68, 71–72 (D.C. Cir. 1936) ("[T]he universal rule . . . is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference."). Moreover, even assuming that—contrary to the separation of powers—this Court could somehow coerce Congress into passing legislation, a law passed by Congress must be signed by the President to become law. *See* U.S. Const., art. I, § 7. It would be speculative to conclude that the President would sign any particular piece legislation passed by Congress into law. Accordingly, plaintiffs have failed to establish redressability—or any of the necessary elements of standing—and their amended complaint should be dismissed.

   C. <u>Sovereign Immunity Deprives the Court of Jurisdiction Over Plaintiffs' Claims</u>

  Sovereign immunity also independently deprives this Court of jurisdiction over plaintiffs' claims. "[T]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) (ellipsis omitted) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). "The shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official

10

capacities." *Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)); *see McLean v. United Sates*, 566 F.3d 391, 401 (4th Cir. 2009) ("[S]overeign immunity extends to the United States Congress when it is sued as a branch of the government."); *SEC v. Comm. on Ways & Means of the U.S. House of Reps.*, 161 F. Supp. 3d 199, 217 (S.D.N.Y. 2015) ("[T]he doctrine of sovereign immunity . . . encompasses Congress and members of Congress acting in their official capacities."). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). Plaintiffs can point to no waiver of sovereign immunity for their claims. None exists, and this Court accordingly lacks jurisdiction over plaintiff's claims.

    D.    <u>The Speech or Debate Clause Deprives this Court of Jurisdiction Over Plaintiffs' Claims</u>

The Speech or Debate clause of the Constitution eliminates any possible federal court jurisdiction over plaintiffs' claims. *See* U.S. Const. art. I, § 6, cl. 1. "The Speech or Debate Clause operates as a jurisdictional bar when the actions upon which a plaintiff sought to predicate liability were legislative acts." *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006) (internal quotation marks and brackets omitted); *see also Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir. 2001) ("We also have no jurisdiction over tort claims against members of Congress due to the legislative immunity created by the Speech or Debate Clause. . . . Under this immunity, legislators are free from civil liability for what they do or say in legislative proceedings." (citations omitted)). To the extent that plaintiffs press a cause of action based on defendants' alleged failure to take legislative action to adopt an alternative method of apportioning House seats, such a claim is precluded by the Speech or Debate Clause. *See Gravel v. United States*, 408 U.S. 606, 617 (1972) (Speech or Debate immunity "equally

11

cover[s]" "voting" as it does actual speech or debate); *Common Cause v. Biden*, 748 F.3d 1280, 1283-84 (D.C. Cir. 2014) (observing that Speech or Debate immunity would preclude suit against Senators challenging non-passage of legislation allegedly favored by a majority of Senators); *SEC v. Comm. on Ways and Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 236 (S.D.N.Y. 2015) (Speech or Debate immunity extends to "proposing legislation" and "voting on legislation"). Indeed, it is well established that "legislators engaged in the sphere of legitimate legislative activity . . . should be protected not only from the consequences of litigation's results but also from the burden of defending themselves" in related lawsuits. *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 732 (1980) (citations and internal quotation marks omitted) (discussing Speech or Debate Clause in context of immunity for state officials acting in a legislative capacity). In addition, Congress, which is a collection of the Members of the two Houses, is equally protected by Speech or Debate Clause immunity. *See Newdow v. Congress*, 328 F.3d 466, 484 (9th Cir. 2003) ("[I]n light of the Speech and Debate Clause of the Constitution, Art. I, § 6, cl. 1, the federal courts lack jurisdiction to issue orders directing Congress to enact or amend legislation."), *rev'd on other grounds*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004); *Freedom from Religion Foundation v. Congress*, No. 07-cv-356, 2008 WL 3287225, at *4 (D.N.H. Aug. 7, 2008) (dismissing claims against Congress on basis of Speech or Debate Clause).

**II. Alternatively, Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6) and Rule 12(b)(2)**

    A. <u>Plaintiffs Fail to State a Claim</u>

Even if plaintiffs could overcome jurisdictional obstacles, their claims should be dismissed for failure to state a claim under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plaintiffs' amended complaint fails this standard.

First, the Supreme Court has expressly upheld the present method of apportioning House Seats, namely the "method of equal proportions," against constitutional attack. *See Montana*, 503 U.S. 442. In *Montana*, the state of Montana challenged the constitutionality of 2 U.S.C. § 2a, in the face of Montana's loss of a House seat. The Supreme Court rejected Montana's challenge, concluding that

> The constitutional framework that generated the need for compromise in the apportionment process must also delegate to Congress a measure of discretion that is broader than that accorded to the States in the much easier task of determining district sizes within state borders. Article I, § 8, cl. 18, expressly authorizes Congress to enact legislation that "shall be necessary and proper" to carry out its delegated responsibilities. Its apparently good-faith choice of a method of apportionment of Representatives among the several States "according to their respective Numbers" commands far more deference than a state districting decision that is capable of being reviewed under a relatively rigid mathematical standard.
>
> . . .
>
> The decision to adopt the method of equal proportions was made by Congress after decades of experience, experimentation, and debate about the substance of the constitutional requirement. Independent scholars supported both the basic decision to adopt a regular procedure to be followed after each census, and the particular decision to use the method of equal proportions. For a half century the results of that method have been accepted by the States and the Nation. That history supports our conclusion that Congress had ample power to enact the statutory procedure in 1941 and to apply the method of equal proportions after the 1990 census.

*Montana*, 503 U.S. at 464–66 (footnotes omitted). *Montana* controls the present case. Accordingly, plaintiffs have no plausible claim for relief, and their amended complaint should be dismissed under Rule 12(b)(6).

Second, plaintiffs fail to state a claim because no court, under any theory of liability, has ever recognized a cause of action against Congress or a Member of Congress for taking, or failing to take, legislative action to an individual's satisfaction. *See Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (affirming *sua sponte* dismissal of claims asserted against Senator, because "[a] citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views"); *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988) (affirming dismissal of *pro se* claim because legislator's failure to assist constituent was "neither inappropriate nor actionable"); *Damato v. Rell*, 2010 WL 2475666, at *3 (D. Conn. June 14, 2010) ("The refusal of a [M]ember of Congress to assist a constituent . . . does not constitute a cognizable claim"); *De Masi v. Schumer*, 608 F. Supp. 2d 516, 525 n.12 (S.D.N.Y. 2009) (same, collecting cases). On this basis too, plaintiffs' amended complaint should be dismissed.

B. <u>The Court Lacks Personal Jurisdiction Over Three Individual Defendants</u>

Finally, the complaint should be dismissed as against Speaker Pelosi, Leader McCarthy, and Leader McConnell for lack of personal jurisdiction. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing," including an "averment of facts that … would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted). Although Leader Schumer represents New York, the remaining three individual defendants are legislators from other states, and plaintiffs make no factual averments to show the necessary contacts of the three to this District. *See, e.g., Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Such a complaint aimed at a policy grievance against out-of-state legislators, without more, is insufficient under Rule 12(b)(2). *See, e.g.*, *Subramaniam v. Beal*, No. 12-cv-1681, 2013

14

WL 5462339, at *3 (D. Or. Sept. 27, 2013) (dismissing suit filed in Oregon against former Senator from Texas).

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' amended complaint.

Dated: New York, New York
June 7, 2019

          Respectfully submitted,

          GEOFFREY S. BERMAN
          United States Attorney for the
          Southern District of New York
          *Counsel for Defendants*

By:   /s/ Steven J. Kochevar
       STEVEN J. KOCHEVAR
       Assistant United States Attorney
       86 Chambers Street, Third Floor
       New York, New York 10007
       (212) 637-2715
       steven.kochevar@usdoj.gov