**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------

EQUAL VOTE AMERICA CORP., LEWIS Y. LIU

|  |  |
|---|---|
| **Plaintiffs,** | **Case No.: 19-cv-00311 (CM)** |

-against-

CONGRESS;
NANCY PELOSI, in her official capacity
as the Speaker of the House of the Representatives;
KEVIN McCARTHY, in his official capacity as the
Minority Leader of the House;
MITCH McCONNELL, in his official capacity
as the Senate Majority Leader; and
CHARLES SCHUMER, in his official capacity as
the Senate Minority Leader,

**Defendants.**

---------------------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO

## DEFENDANTS' MOTION TO DISMSS

Yu-Xi (Glen) Liu, Esq. (yl3022)
Attorney for Plaintiffs,
602 39th Street, Brooklyn, NY 11232
Telephone: (347)721-1383
yuxiliuny@yahoo.com

*For Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... 3

CONSTITUTIONAL PROVISIONS INVOLVED ........................................... 4

INTRODUCTION ................................................................................................ 5

STATEMENT OF FACTS ................................................................................. 7

ARGUMENT ....................................................................................................... 10

   I.   The Court Has Subject Matter Jurisdiction over this Constitutional Issue ........................... 10

      A.  The Clemons Decision was not Applicable to this Action ............................................ 10

          1.  The Supreme Court Nullified the Lower Court's Ruling ......................................... 10

          2.  The Clemons Filed Against the Wrong Party ......................................... 11

      B.  Plaintiffs Have the Standing to Assert their Constitutional Rights ............................... 11

          1.  Plaintiffs Have Demonstrated Concrete Injury ......................................... 11

          2.  The "Widely Shared Hence No Standing" Argument is Disingenuous and Unconstitutional ......................................... 12

          3.  Plaintiffs Have Established Traceability to Injury ......................................... 14

          4.  Defendants Have Forgotten the Lesson of Dred Scott ......................................... 14

          5.  Defendants Are Using the Same Tactic Used by Authoritarian Regimes ............... 15

          6.  Plaintiffs Have Presented Workable Relief ......................................... 16

      C.  The Sovereignty Immunity Shall not be Used to Cover Constitutional Violations ....... 17

      D.  The Speech or Debate Clause is not Applicable to this Constitutional Dispute ............. 18

   II.  Plaintiffs' Have Strong Claims under Rule 12(b)(6) and Rule 12(b)(2) ............................. 18

      A.  Plaintiffs Have Stated a Fact-based Claim ......................................... 18

      B.  The Court Has Jurisdiction over this Constitutional Dispute ......................................... 19

   III.  The Founding Fathers' Intent and Five Constitutional Questions ....................................... 22

      A.  The Founding Fathers' Clear and Precise Intent ......................................... 22

      B.  Plaintiffs Presented Six Constitutional Questions ......................................... 23

Conclusion ......................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                              **Page**

*Baker v. Carr*, 369 U.S. 186 (1962) ......................................................................... 9, 18, 20

*Brown v. BoE,* 347 U.S. 483 (1954) ......................................................................... 15, 16

*Clemons v. Department of Commerce,* 562 U.S. 1105 (2010) ........................................ 10

*Department of Commerce v. Montana,* 503 U.S. 442 (1992) ......................................... 20

*Dred Scott v. Sandford,* 60 U.S. 393 (1857) ................................................................ 15

*Federal Election Commission v. Akins,* 524 U.S. 11 (1998) .......................................... 13

*Marbury v. Madison*, 5 U.S. 137 (1803)............................................................... 10, 16  20

*Massachusetts v. Environmental Protection Agency (EPA),* 549 U.S. 497 (2007)........................ 14

*Obergefell v. Hodges*, 576 U.S. ___ (2015) ........................................................... 15, 16

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) ........................ 14

*Plessy v. Ferguson,* 163 U.S. 537 (1896) .................................................................... 15

*Reynolds v. Sims*, 377 U.S. 533 (1964)............................................................... 9, 18, 20

*Roe v. Wade*, 410 U.S. 113 (1973) ........................................................................ 15, 16

*Wesberry v. Sanders,* 376 U.S. (1964)...................................................................... *passim*

*U.S. v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669 (1973)....................... 13


**Statutes**                                                                                          **Page**

28 U.S.C. § 2403(a) ....................................................................................................... 4


**Constitutional Provisions**

The Fugitive Clause ....................................................................................................... 14

Three-Fifths Clause ....................................................................................................... 14

U.S. Const. Amend. I...................................................................................................... *passim*

U.S. Const. Amend. V .................................................................................................... *passim*

U.S. Const. Amend. XIV ................................................................................................ *passim*

U.S. Const. Amend. X .................................................................................................... 17

U.S. Const. Article I, § 1 ................................................................................................ 16

U.S. Const. Article I, § 2 ................................................................................................ *passim*

U.S. Const. Article I, § 6 ................................................................................................ 18

U.S. Const. Article II, § 1 ............................................................................................... 19

U.S. Const. Article III, § 1 .............................................................................................. 10

U.S. Const. Article III, § 2 .............................................................................................. 10

U.S. Const. Article IV, § 2.............................................................................................. *passim*

U.S. Const. Article VI, Par. 2 & 3 .................................................................................. 16

## JURISDICTION

The Plaintiff is a resident and registered voter in the State of New York, and the Complaint concerns a constitutional question. This Court has jurisdiction under 28 U.S.C. § 2403(a) with respect to a constitutional question.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

U.S. Const. Article I, § 1 provides in pertinent part:
- All legislative Powers herein granted shall be vested in a Congress of the United States.

U.S. Const. Article I, § 2 Clause 1 (the House by People clause) provides in pertinent part:
- … The House of Representatives shall be composed of Members chosen every second Year by the People of the several States.

U.S. Const. Article I, § 2 Clause 3 (the Equal Representation clause) provides in pertinent part:
- Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons.

U.S. Const. Article I, § 3 Clause 1 (the Senate clause) provides in pertinent part:
- The Senate of the United States shall be composed of two Senators from each State.

U.S. Const. Article I, § 6 Clause 1 provides in pertinent part:
- for any Speech or Debate in either House, [senators and representatives] shall not be questioned in any other place.

U.S. Const. Article II, § 1 (the Electoral College clause) provides in pertinent part:
- Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress.

U.S. Const. Article III, § 1 provides in pertinent part:
- The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.

U.S. Const. Article III, § 2 provides in pertinent part:
- The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States… to Controversies to which the United States shall be a Party.

U.S. Const. Article IV, § 2 (the Privilege & Immunity clause) provides in pertinent part:

- The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

U.S. Const. Article VI, Par. 2 provides in pertinent part:
- This Constitution, and the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Article VI, Par. 3 provides in pertinent part:
- The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution.

U.S. Const. Amend. I. provides in pertinent part:
- Congress shall make no law … or abridging the freedom of speech … or the right of people … and to petition the Government for a redress of grievances.

U.S. Const. Amend. V. provides in pertinent part:
- No person shall be … nor be deprived of life, liberty, or property, without due process of law.

U.S. Const. Amend. XIV. § 1. provides in pertinent part:
- No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;
- …nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV.  § 2. provides in pertinent part:
- Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed.
- But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress… or in any way abridged.

U.S. Const. Amend. XIV.  § 5. provides in pertinent part:
- The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. Amend. X provides in pertinent part:
- The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.

## INTRODUCTION

On January 11, 2019, Plaintiffs filed a civil lawsuit against Defendants on the ground that the existing apportionment laws are unconstitutional. On February 11, an amended complaint (AC) was filed.

On April 26, 2019, Chief Judge Colleen McMahon presided the initial conference attended by Plaintiffs' attorney and Defendants' attorney.

On June 7, 2019, Defendant's attorney filed a Memorandum of Law and a Notice of Motion to Dismiss Plaintiffs' amended complaint.

On July 9, a separate motion was filed to add more than 200 individual citizens from 40 states to this civil lawsuit. These individuals have voluntarily and willingly joined in this action as co-plaintiffs.

On July 9, Plaintiffs filed a Declaration in Opposition to Defendants' Motion to Dismiss.


The relevant historical facts, census data, constitutional provisions and legal analyses presented by Plaintiffs in the Amended Complaint (AC) dated 02/11/2019 demonstrated that although the Constitution guarantees Equal Representation for every American in every state, since the Reapportionment Act of 1929 enacted by the 71st Congress, it is difficult to imagine a more blatant betrayal of the clear and precise intent of our Founding Fathers, a more brazen violation of the Constitution, and a more flagrant infringement of an overwhelming majority of Americans' constitutional right to equal representation in the House of Representatives.

Facing these indisputable facts presented in the Amended Complaint by Plaintiffs, Defendants' memorandum in support of its motion to dismiss resorted to omission of the facts, misinterpretation of the previous Court decision, misrepresentation of Plaintiffs' claims, avoidance of Founding Fathers' clear and precise intent, ignorance of constitutional textual provisions, and obliviousness of the relevant Supreme Court decisions, while completely turning a blind eye to the fundamental reality that an overwhelming majority of Americans has been under-represented in the House of Representatives.

This Memorandum will respond to Defendants' arguments point by point as follows.

## STATEMENT OF FACTS

The relevant historical facts, census data, constitutional provisions, and previous court decisions presented by Plaintiffs in the Amended Complaint (AC) dated 02/11/2019 as well as the Declaration in Opposition to the Motion to Dismiss dated 07/09/2019 may be summarized as follows:

1. "Taxation without Representation" was one of the primary root causes for the Colonists to declare Independence.

2. Without the "Great Compromise" the 1787 Constitutional Convention would have collapsed.

3. The "Great Compromise" was essentially the Founding Agreement for the Union that established the bicameral national legislature with Equal Representation where the people were equally represented in the House of Representatives, and the states were equally represented in the Senate.

4. Urged by Jefferson, President Washington exercised the very first presidential veto over the first apportionment bill because they both believed the bill did not comply with the core principle of the "Great Compromise". Furthermore, Jefferson insisted the apportionment should be derived from arithmetical operation, about which no two men can ever possibly differ.

5. Madison proposed the original first Amendment which would increase the number of the house seats proportionally - without a cap - as the national population grows.

6. Writing for the Supreme Court decision in *Wesberry v. Sanders*, 376 U.S. 1 (1964), Justice Black not only recounted the history of the Great Compromise, but also reaffirmed the Founding Fathers' clear and precise intent:

   *"when the delegates agreed the House should represent "people," they intended that, in allocating Congressmen, the number assigned to each State should be determined solely by the number of the State's inhabitants. The Constitution embodied Edmund Randolph's proposal for a periodic census to ensure "fair representation of the people," an idea endorsed by Mason as assuring that "numbers of inhabitants" should always be the measure of representation in the House of Representatives."*

   *"All elections ought to be equal. Elections are equal when a given number of citizens in one part of the state choose as many representatives as are chosen by the same number of citizens in any other part of the state. In this manner, the proportion of the representatives and of the constituents will remain invariably the same."*

7. From 1792 until 1911, the number of house seats increased as the national population grew. However, Congress caped the number of house seats at 435 in the Reapportionment Act of 1929, and enacted the so-called "Equal Proportional" formulas in 1941. As a result:

   (1) Wyomingites have always enjoyed the unrivaled guaranteed 100% full representation;

   (2) since 1990 over 20% of Americans nationwide have been taxed without representation (Tw/oR), Montanans suffered the worst Tw/oR at 43% (493,782 of 902,195) among all 50 states, while Rhode Islanders suffered the least Tw/oR (9.6% after 1990, 5.8% after 2000, and over-representation at 7.1% after 2010);

   (3) following the 2010 Census, over 7.7 million California (22.7%) have been Tw/oR, which is more than the population in 38 states;

   (4) most states (over 95% of population) have been deprived of at least 0.5 house seats;

   (5) residents in some states (e.g. Florida, Texas) have been consistently assigned "high priority value" while residents in other states (e.g. Illinois, New York) have been condemned with "low priority value".

8. The historical background of the Reapportionment Act of 1929 indicated it was driven primarily by partisan considerations instead of faithful compliance of the Great Compromise and the Constitution.

9. Plaintiffs proposed a simple straightforward arithmetic solution, "the Nearest Tenth Digit" method modified from the "Wyoming Rule", which will ensure Equal Representation for every American in every state. Based on 2017 Census estimates:

   (1) Wyoming has the least population of 579,315. Hence, NY population (19,849,399) / (579,315) = 34.26, rounded to the nearest tenth digit, 34.3. NY's number of seats increases from 27 to 34.3, i.e. 33 members have 1 vote each, the 34th member has a vote of 1.3 for a larger district.

   (2) The current 435-body House will increase by 107 to 542, among which 497 regular members have 1 vote each, and 45 special members have a vote of 1.1 to 1.9, each representing a more populous district in each state.

(3) The total House votes would increase to 561.1 with 280.6 being the simple majority.

(4) Under this proposal, the variance of representation among 50 states will be within +/-4%, compared to currently under 43% and over 7.1%.

(5) Most importantly, all Americans of all states will be guaranteed equal presentation at the same time, there will be no American of any state condemned as "lower priority" any more.

(6) As long as both the national population and the least state population move at a similar pace, the total number of house seats will be in the range of 500 to 600.

10. The U.S. currently has the highest population per lower house member (748,736/member based on 2017 Census estimate) among the 16 developed democratic countries.

(1) Japan has the second highest at 272,688/member while the other 14 countries ranged from 27,515/member (Finland) to 164,000/member (Australia).

(2) Germany (709), the U.K. (650), France (577) and Japan (465) have more lower house members than the U.S. (435) while their populations are respectively 25%/20%/21%/39% of the U.S.'s.

(3) Plaintiffs' proposed "Nearest Tenth Digit" solution would reduce the ratio to c.a. 600,000, still far higher than the other 15 democracies. Therefore, the argument that America has too many House Representatives does not hold up, and the excuse that the Capitol building does not have enough space is laughable.

11. As of 2017 the compensation for most congressional members is $174,000 and the average Members' Representational Allowance (MRA) was $1,315,523 per representative. Plaintiffs' proposed "Nearest Tenth Digit" solution would cost only $0.58 per person per year. Therefore, the argument that each Congressional member costs too much does not hold up considering the U.S. being the sole superpower in the world.

12. The relevant court decisions include *Baker v. Carr* (1962) and *Reynolds v. Sims* (1964) which established the constitutional principle of "One Person One Vote". *Wesberry v. Sanders (1964),* which affirmed Equal Representation in the House, is the direct controlling case for the present action.

## ARGUMENT

### I.  The Court Has Subject Matter Jurisdiction over this Constitutional Issue

Defendants claimed the Court lacks subject matter jurisdiction over this lawsuit. Such claim ignored the textual provisions of the Constitution and multiple landmark decisions by the Supreme Court.

The Article III, § 1 declares that the Judicial Power shall be vested in the Supreme Court and its lower courts. Article III, § 2 further provides that the Judicial Power shall extend to all Cases including disputes related to the Constitution, the federal Laws and controversies with the United States being a party. In this case Plaintiffs challenge the constitutionality of the existing reapportionment laws enacted by the 71st Congress and continued by the successive Congress ever since.

*Marbury v. Madison*, 5 U.S. 137 (1803) established that the Court has the absolute power to review all acts of Congress where constitutionality is at issue, judge whether they abide by the Constitution, and rule that a law, such as these Apportionment Acts, "repugnant to the Constitution is void".

### A.  The Clemons Decision was not Applicable to this Action

The Supreme Court reviewed *Clemons v. Department of Commerce*, 562 U.S. 1105 (2010) and announced on December 13, 2010 that "*The judgment of the United States District Court for the Northern District of Mississippi is vacated, and the case is remanded with instructions to dismiss the complaint for lack of jurisdiction*."

1.  The Supreme Court Nullified the Lower Court's Ruling

Defendants cited this 1-sentence to support its claim of lacking jurisdiction is amusing if the issue at hand is not so fundamental to the root of our country and to the core principle of the Constitution. To vacate a court order or judgment means to cancel it or render it null and void. In this case, the District Court ruled against the plaintiff who filed similar complaint as this action but with one critical difference. By vacating the lower court's judgment, the

Supreme Court nullified the opinion by the three-Judge Panel and the U.S. Attorney's office's motion to dismiss the case without refuting the validity of the complaint by the plaintiff. However, the Supreme Court sidestepped the issue and made the Clemons case as if it never happened, which means this legal challenge may be pursued again in the future.

2.    The Clemons Filed Against the Wrong Party

Defendants attempted to lump the present case with the Clemons together by ignoring the one critical difference between the two cases, which is that Clemons filed against the wrong party, the Department of Commerce (DOC). The DOC is an agency within the Executive branch and merely carries out the existing laws to conduct decennial census, i.e. counting heads. The DOC is not responsible for the unequal representation caused by the reapportionment laws since 1929. It was the 71st Congress that enacted these laws, which in turn have been continued by successive Congress. Therefore, we filed against Congress collectively. Defendants acknowledged that the Supreme Court did not provide any explanation to its vacating decision, hence there is no basis to claim the Supreme Court's summary holding in Clemons should apply to this case.

## B.  Plaintiffs Have the Standing to Assert their Constitutional Rights

1.    Plaintiffs Have Demonstrated Concrete Injury

1)    Defendants claimed Plaintiffs failed to establish injury-in-fact that is "concrete and particularized". The "injury-in-fact" criteria may be appropriate for cases involved bodily harm or monetary loss, but it should not be applicable in cases concerning individual's rights protected by the Constitution, such freedom of speech, the right to vote and the right to equal representation.

2) The data analyses for unequal representation among 50 states presented in Statement of Facts are indisputable. In another word, Defendants' logic would imply that violation of constitutional rights such as equal representation is considered no injury at all.

3) When Solomon Northup's (*Twelve Years a Slave*) human dignity was deprived of during the   Slavery era, when Susan Anthony's right to vote was denied before 1919, when Oliver Brown's equal protection was refused in 1954, when Ernesto Miranda's due process was negated in 1963 … because these injustice caused neither bodily harm not monetary loss, by Defendants' logic, these named victims had no standing at all to defend themselves.  History has clearly repudiated such wrong-headed argument.

2. The "Widely Shared Hence No Standing" Argument is Disingenuous and Unconstitutional

1) As expected, Defendants argued for dismissal because Plaintiffs' alleged harm is "widely-shared" among over 95% of Americans. The logic of "widely-shared-hence-no-standing" (WSHNS) is disingenuous at best and unconstitutional for the matter at hand. If a citizen's complaint must be based on an individualized injury, it means an existing law applies only to this citizen. However, laws are supposed to apply to all people. There should be no law targeted to one particular individual; or if there is, then such law by definition is either discriminative or giving unfair advantage, hence unconstitutional in either case.

2) Secondly, the WSHNS argument means if a harm is imposed upon and shared by a large population, then no one in this population has standing to sue. First of all, dictators around the world would no doubt embrace such WSHNS argument. Secondly, by dismissing Plaintiffs' standing without addressing the case's merits, Defendants not only forget they are taxpayer-funded public servants, but also contradict with the First Amendment that

guarantees every American the right to petition for a redress of grievances. There is no other grievance more egregious than infringement of equal representation and voting right.

3)  When constitutional rights were violated by one particular law, it had always occurred upon a significant portion of population, such as the Three-Fifths clause, the Fugitive clause, and Jim Crow Laws. By the WSHNS logic, Dred Scott, Homer Plessy, Susan Anthony, Oliver Brown, Rosa Parks, etc. could never have standing to sue, and should have simply stayed quiet and obedient in the face of injustice. Here, Plaintiffs' constitutional right to equal representation in the House of Representatives is violated, and as demonstrated in Declaration and in the foregoing Statement of Facts, an overwhelming majority of Americans have their constitutional right similarly violated. To use Defendants' self-serving anti-constitutional logic, because it just so happens that a lot of Americans have their constitutional right violated, none of us has a standing to redress the very wrong inflicted upon us. However, the Supreme Court has repeatedly rejected the WSHNS logic in numerous decisions:

a.  *U.S. v. SCRAP* 412 US 669 (1973) ruled that "*To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody*."

b.  *FEC v. Akins* 524 U.S. 11 (1998) ruled that "an injury widely shared does not, by itself, automatically disqualify an interest for Article III purposes. Such an interest, where sufficiently concrete, may count as an '*injury in fact… [W]here a harm is concrete, though widely shared, the Court has found injury in fact*".

c.  In *Covington v. Jefferson County* (2004) the Ninth Circuit reversed a lower court ruling, affirming the petitioner's standing, "*the most recent Supreme Court precedent appears*

*to have rejected the notion that injury to all is injury to none for standing purposes… Instead, recent precedent holds that a generalized injury, by itself, is no bar to standing*."

d. *Mass. v EPA* 549 U.S. 497 (2007) ruled that "*to deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody*."

3. Plaintiffs Have Established Traceability to Injury

1) The relevant facts and data analyses presented by Plaintiffs established a clear and indisputable traceability from the existing reapportionment laws which was enacted by the 71st Congress to the resultant unequal representation ever since.

2) Although neither the current Congress nor Defendants personally enact these existing reapportionment laws, the fact that they have carried on these laws made them as culpable as the 71st Congress.

3) By Defendants logic, there would have been no need for the 113th Congress to apologize for Japanese Internment because the shameful event took place during WWII. The current Congress under the leadership of Defendants have not only the power but also the duty to pass new reapportionment laws that honors the founding agreement reached by our Founding Fathers and complies with the Constitution.

4) *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) reminded us that each generation of Americans including each Congress have the duty to uphold the Constitution:

*Our Constitution is a covenant running from the first generation of Americans to us and then the future generations. It is a coherent succession. Each generation must learn anew that the Constitution's written terms embody ideas and aspirations that must survive more ages than one.*

4. Defendants Have Forgotten the Lesson from Dred Scott

1) In 1857, Slavery was still condoned by the Constitution, blacks were counted only Three-Fifth in census, and slaves were treated as property of slaveowners, not as human being, hence subject to the Fugitive Clause. Therefore, in terms of legal-technicality the Supreme Court decision to deny Mr. Scott's standing to sue was correct.

2) However, the *Dred Scott v. Sandford,* 60 U.S. 393 (1857) decision along with *Plessy v. Ferguson,* 163 U.S. 537 (1896) has been universally considered one of the worst decisions in the Court's history, and emphatically repudiated by the 13th and 14th Amendments. Using legal-technicality to justify turning a blind eye to or even preserving injustice was wrong in 1857, and is equally wrong now.

3) Apparently, Defendants have forgotten the lesson of Dred Scott, and are now attempting to use a similar legal-technicality to preserve an indisputable breach of the Founding Agreement of the Union and indefensible violation of the Constitution.

4) Since the end of WWII, whenever individuals' constitutional rights were concerned, the Supreme Court has repeatedly affirmed plaintiffs' standing to assert their fundamental rights such as equal protection in *Brown v. BoE* 347 U.S. 483 (1954) for people of color, privacy in *Roe v. Wade* 410 U.S. 113 (1973) for women, and marriage equality in *Obergefell v. Hodges* 576 U.S. ___ (2015) for gays and lesbians.

5. Defendants Are Using the Same Tactic Used by Authoritarian Regimes

1) In many authoritarian regimes, one of the common oppressive tactics is to tell anyone who dares to challenge an unjust status quo - such as the right to vote that is not even worth the paper it is printed on - that "How dare you challenge People's government by claiming you and overwhelming majority of people are mistreated? Everyone is being treated the same, why are you making trouble?"

2) In essence, these authoritarian regimes have been employing the same perverse WSHNS logic to oppress their people into silence, and crack down anyone who dares to challenge.

The outcome of this case will prove whether or not our country, America, – once called "*a Shining City on a Hill*" - is genuinely and constitutionally better than those authoritarian regimes.

6.  Plaintiffs Have Presented Workable Relief

    1)  Defendants claimed "Indeed, the only certain effect of plaintiffs' requested relief would freeze in place the present allocation of House seats." This is either misinterpretation or misrepresentation of the relief and solution presented by Plaintiffs.

    2)  In the Amended Complaint, Plaintiffs clearly explained the redress being sought is simply for the Court to make a declaratory judgment - as the Supreme Court clearly did in *Wesberry v. Sanders* (1964) – such as follows:

        *The Apportionment Acts of 1911, 1929 and 1941 are unconstitutional with respect to the Great Compromise, Article I, § 1 & 2, Article IV, § 2, the First Amendment, the Fifth Amendment and the Fourteenth Amendment. Every American's rights to equal representation in the House and equal vote in any election shall not be denied, diluted, debased, diminished, demeaned, disadvantaged, or manipulated in any way by any means on any account.*

    3)  Such judicial review is well within the Court's power and duty since *Marbury v. Madison*, (1803). In essence Plaintiffs appealed the Court to follow the precedents of *Brown v. BoE, Roe v. Wade* and *Obergefell v. Hodges* to declare some existing doctrines or laws unconstitutional, but never asked the Court to give Congress instructions regarding what and how to legislate.

    4)  If the Court indeed declares the existing reapportionment laws unconstitutional, then according to Article V Par. 2 & 3, the current Congress, under the leadership of Defendants, will have to pass new reapportionment laws to replace the existing ones. Defendants have not only the power but also the duty to pass new legislations that honors the Founding Agreement reached by our Founding Fathers and complies with the Constitution. In essence, Plaintiffs appealed the current Congress under the leadership of

Defendants to follow the examples of the 88th and 89th Congress which passed the Civil Rights Act of 1964 and Voting Rights Act of 1965, respectively.

5) The new reapportionment law shall (1) remove the cap of the total number of house seats; and (2) adopt the "Nearest Tenth Digit" method - a simple straightforward arithmetic as Jefferson insisted - which can be understood and calculated by any 5th Grader children. The amount of increased spending for additional house members is immaterially insignificant in terms of the annual federal budget. Technologically, vote counter in the House needs to be upgraded to reflect the tenth digit because some House Representatives' votes range from 1.1 to 1.9.

## C. The Sovereignty Immunity Shall not be Used to Cover Constitutional Violations

1. Defendants cited the Sovereign Immunity doctrine to claim lack of redressability. The Sovereign Immunity refers to the fact that the government cannot be sued without its consent, and it was derived from British common law doctrine that the King could do no wrong because the King was the Sovereignty. On the other hand, our country is a Republic where People are the Sovereignty.

2. In fact, the Constitution neither mentioned or grant "Sovereign Immunity" to anyone. Being a constitutional Republic, this country's sovereignty belongs to the People. And according to the Tenth Amendment, any power not delegated to the government are reserved to the People.

3. It appears that Defendants have taken a view that Congress and its leadership are above the law, and not accountable to the People. If Defendants' view is correct, then the Preamble of "We the People" and Lincoln's "Government of the People, by the People and for the People" are indeed empty slogan as other authoritarian regimes have long accused of America.

4. The case *Dotson v. Griesa* (2d Cir. 2005) cited by Defendants was about a dispute of employment discrimination suffered by Dotson, the plaintiff who was seeking financial

compensation. The Dotson case is not applicable to the present case, which is about violation of overwhelming majority of Americans' constitutional right to equal representation and equal vote, and is not seeking any financial compensation.   Having established the "One Person One Vote" constitutional principle based on Article IV, § 2 (the Privilege & Immunity clause) and the 14th Amendment, the Supreme Court has time and again affirmed plaintiffs' standing to sue for equal representation and equal vote in multiple landmark decisions: *Baker v. Carr*, 369 U.S. 186 (1962), *Reynolds v. Sims*, 377 U.S. 533 (1964) and *Wesberry v. Sanders.*

**D.  The Speech or Debate Clause is not Applicable to this Constitutional Dispute**

1. Defendants claimed the Speech or Debate clause precludes Plaintiffs from pressing Defendants for a cause of action.  In essence, Plaintiffs filed this complaint against Congress as an institution because (1) it was the 71st Congress that enacted the existing reapportionment laws and (2) all subsequent Congress have carried on these laws. The complaint was neither against Defendants in personal terms for any of their Speech or Debate in either House, nor seeking any personal liability from Defendants.

2. It is impossible for Plaintiff to file against the 71st Congress and other previous Congress, and it is impractical for Plaintiffs to file against every congressional member in the current Congress. Defendants are named on an ex officio basis because they hold leadership position and have the administrative power to initiate or deny the legislative process for any new law.

**II.  Plaintiffs' Have Strong Claims under Rule 12(b)(6) and Rule 12(b)(2)**

**A.  Plaintiffs Have Stated a Fact-based Claim**

1. Defendants claimed Plaintiffs failed to plead "enough facts to state a claim to relief that it is plausible on its face" and "factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged."

2. The relevant facts presented in the Statement of Facts have demonstrated our Founding Fathers' clear and precise intent regarding Equal Representation in the House, and the data analyses based on census data and actual allocation of house seats have illustrated the significant unequal representation imposed upon overwhelming majority of Americans include Plaintiffs.

3. Defendants not only never disputed these historical facts and data analyses, but also never responded to the legal analyses presented by Plaintiffs' AC that show multiple violations of overwhelming majority of Americans' constitutional rights:

   1) Article I, § 2 Clauses 1 & 3 guarantees every American's right to equal taxation and representation in the House.

   2) Article II, § 1 mandates that each state's electoral votes for presidential elections are equal to the number of representatives and senators, hence the significant under-representation in the House has diluted overwhelming majority voters' vote in presidential elections.

   3) Article IV, § 2 guarantees Citizens of all state the same Privileges and Immunities, hence it is unconstitutional that (1) residents in one state are always 100% fully represented while residents in the 49 states are significantly under-represented; and (2) some states are assigned "high priority value" while others are condemned to "low priority value".

   4) The First Amendment prohibits any law that abridges the freedom of speech, but significant portion of Americans (over 20% nationwide, and over 43% for Montanans) have been taxed without representation.

   5) The Fifth Amendment guarantees due process protection for every American, but the existing reapportionment laws have violated both substantive and procedural due process of overwhelming majority of people whose value of vote would fluctuate when they move from one state to another.

6) The Fourteenth Amendment § 1 again guarantees every citizen's equal privileges or immunities, every person's life, liberty, or property with due process of law and equal protection of the laws.

7) The Fourteenth Amendment § 2 further mandates the right to vote at any election including "Representatives in Congress" shall not be abridged in any way.


**B.  The Court Has Jurisdiction over this Constitutional Dispute**

1. Defendants claimed the present case should be dismiss as against Speaker Pelosi, Leader McCarthy, and Leader McConnell for lack of personal jurisdiction. As mentioned in Plaintiffs' Declaration, more than 200 Americans from 40 states including California and Kentucky have joined the civil lawsuit concerning the constitutional right to equal representation for all Americans.

2. Defendants cited *Department of Commerce v. Montana*, 503 U.S. 442 (1992) as the controlling decision for the present case. Let's re-examine this Montana case.  First of all, there are two critical differences between the Montana case and the present case: (1) as in the Clemons case, Montana sued the wrong party, the Department of Commerce which did not cause the unequal representation; and (2) the relief sought by Montana was to retain its two house seats. In contrast, Plaintiffs in this case have presented a simple solution that will ensure equal representation for every American in every state.

3. In the Montana case, the Government argued that the allocation of Congressional seats was a political question to be left to the discretion of Congress without interference by Federal judges. The Court rejected that argument, finding the dispute to be appropriate for judicial resolution. Following the landmark decision of *Marbury v. Madison*, and consistent with *Baker v. Carr*, 369 U.S. 186 (1962), *Reynolds v. Sims*, 377 U.S. 533 (1964) and *Wesberry v. Sanders*, Justice John Paul Stevens affirmed that while the Court had "respect for a coordinate branch of

Government," it nonetheless had to exercise its jurisdiction to decide whether Congress had acted "within the limits dictated by the Constitution."

4. Justice Stevens reaffirmed the *Wesberry* decision, "while subsequent intrastate districting cases have interpreted the *Wesberry* standard as imposing a burden on the States to make a good faith effort to achieve precise mathematical equality," but conceded that "that goal is rendered illusory for the Nation as a whole by the constraints imposed by Article I, § 2: the guarantee of a minimum of one Representative for each State and the need to allocate a fixed number of indivisible Representatives among 50 States of varying populations." Since there is bound to be "a significant departure from the ideal," Justice Stevens said, the method that Congress adopted in 1941, after long study and on the basis of expert advice, meets constitutional requirements.

5. Had Montana's request been granted, other states would have certainly followed to sue to retain the seats they were losing, thereby rendering the reapportionment process into endless legal chaos. Therefore, it was no surprise at all that the Court rejected Montana's narrow-minded self-interest-only request without any regard of the impact towards other states.

6. Furthermore, Justice Stevens recognized the constitutional mandate of equal representation but was constrained by (1) a minimum of one representative for each state and (2) the need to allocate a fixed number of indivisible representatives among to states. Justice Stevens was correct on the minimum of one representative for each state because the Constitution clearly states such. However, with all due respect, Justice Stevens was not correct regarding the fixed number of indivisible representatives because the Constitution does not provide such mandate. It was the Reapportionment Act of 1929 that fixed the total house seats at 435 without any constitutional basis, and that has caused significant unequal representation ever since.

7. Last but not the least, the five formulas presented to the Court in the Montana case were all within the conventional thinking of no fractional representative/vote, which has made it

impossible to achieve equal representation among the 50 states. On the other hand, by allowing one decimal place, the "Nearest Tenth Digit" method proposed by Plaintiffs will achieve mathematical equality for all Americans in all states with a variance of within +/-4%, far better than the so-called "equal proportional" formulas, which (1) have assigned "high priority value" to some Americans while condemning other Americans as "low priority value", and (2) have resulted in significant unequal representation among the 50 states. Again, Jefferson insisted simple arithmetic operations.

## III.  The Founding Fathers' Intent and Five Constitutional Questions

### A.  The Founding Fathers' Clear and Precise Intent

Plaintiffs believe the *Wesberry v. Sanders* decision should be the direct controlling case for the present case because it reaffirmed the constitutional principle of Equal Representation. Justice Black emphatically reminded all of us:

*We hold that, construed in its historical context, the command of Article I, § 2 that Representatives be chosen "by the People of the several States" means that, as nearly as is practicable, one man's vote in a congressional election is to be worth as much as another's. ...*

*We do not believe that the Framers of the Constitution intended to permit the same vote-diluting discrimination to be accomplished through the device of districts containing widely varied numbers of inhabitants. To say that a vote is worth more in one district than in another would not only run counter to our fundamental ideas of democratic government, it would cast aside the principle of a House of Representatives elected "by the People," a principle tenaciously fought for and established at the Constitutional Convention.*

*The history of the Constitution, particularly that part of it relating to the adoption of Article I, § 2, reveals that those who framed the Constitution meant that, no matter what the mechanics of an election, whether statewide or by districts, it was population which was to be the basis of the House of Representatives.*

The above ruling opinion by Justice Black reaffirmed that the Founding Fathers' clear and precise intent was to guarantee equal representation in the House for every American in every state, not just among districts within one state. In particular, the principle of equal representation was established in the historical context of the "Great Compromise" reached by Founding Fathers to guarantee

fairness and balance of power for all states in the two chambers, people are equally represented in the House while states are equally represented in the Senate.

## B.  Plaintiffs Presented Six Constitutional Questions

1.  Whether or not is "Taxed without Representation" un-American and unconstitutional?

2.  Has the history of the Great Compromise not provided the clear and precise intent of our Founding Fathers regarding the Equal Representation in the House of Representatives?

3.  Should the "Great Compromise" be still Honored? This Founding Agreement for the Union reached by our Founding Fathers includes two parts that are contingent upon each other. Since the House side has been breached since 1929, can the Senate side still be legitimate? And when a contract has been fundamentally breached, does Plaintiff have the standing to sue and does the Court have the duty to adjudicate?

4.  Does Article I § 2 "*Representatives and direct Taxes shall be apportioned among the several States according to their respective Numbers*" provide clear and precise mandate for equal representation in the House?  How is it constitutional for every American to be subject to the same federal taxes, but overwhelming majority of Americans have been deprived of equal representation in the House?

5.  Does Article IV, § 2 and the 14th Amendment provide clear and precise mandate for equal Privilege & Immunities for every American in every state? Without the right to equal representation in the House and equal vote for house representatives, our country's founding principle of "All Men are Created Equal" has become hollow.

6.  Does the Fifth Amendment guarantee due process for every American in every state so that the value of his/her vote will not be inflated or diluted when he/she moves from state A to state B? In fact, even the people in state A & B who do not move will find the value of their vote fluctuated simply because other residents move.

## <u>CONCLUSION</u>

For all of the aforementioned reasons, Defendants' motion to dismiss should be denied in its entirety.

**Dated: July 9, 2019**                                      **Respectfully submitted,**


   /s/ yuxi liu
Yu-Xi (Glen) Liu, Esq. (yl3022)
Attorney for Plaintiffs,
602 39th Street, Brooklyn, NY 11232
(347)721-1383