**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EQUAL VOTE AMERICA CORP., LEWIS Y. LIU<br><br>Plaintiffs,<br><br>-against-<br><br>CONGRESS; NANCY PELOSI, in her official capacity as the Speaker of the House of the Representatives; KEVIN MCCARTHY, in his official capacity as the Minority Leader of the House; MITCH McCONNELL, in his official capacity as the Senate Majority Leader; and CHARLES (CHUCK) SCHUMER, in his official capacity as the Senate Minority Leader,<br><br>Defendant[s]. | No: 1:19-cv-00311 (CM) |

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

McMahon, C.J.:

Plaintiffs Lewis Y. Liu ("Liu") and Equal Vote America Corp. ("EVA") bring this declaratory judgment action against Defendants Nancy Pelosi, Kevin McCarthy, Mitch McConnell, Charles Schumer and "all successive classes of Congress since 1911 including the current Congress." (Dkt. No. 9, hereinafter "AC," or "Complaint," at 1.)   The thrust of the Complaint is that the apportionment laws, which determine the allocation of 435 House seats among the 50 states, dilute the representation of persons located in more populous congressional districts.  Plaintiffs claim that this apportionment scheme violates numerous Constitutional provisions, including the First, Fifth, and Fourteenth Amendments.  They seek an order declaring the Apportionment Acts of 1911, 1929, and 1941 unconstitutional – a ruling Plaintiffs believe

necessary to restore "Every American's rights to equal representation . . . and equal vote in any election." (*Id.* at 22.)

Defendants moved to dismiss for a lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1), among other arguments. (Dkt. No. 21.)  Plaintiffs opposed and moved for leave to amend the Complaint. (Dkt. No. 23.)

For the following reasons, Defendants' motion to dismiss is granted, and Plaintiffs' motion for leave to amend the complaint is denied.

## BACKGROUND

To begin at the beginning:  the method of congressional apportionment in use today originated at the Constitutional Convention in 1787.  In order to balance the interests of more populous and less populous states, the Framers reached the Great Compromise, embodied in a bicameral legislature, with the House of Representatives including members "apportioned among the several States . . . according to their respective Numbers," U.S. Const. Art. I, § 2, and the Senate, "composed of two Senators from each state," *Id.* § 3.  Although more populous states could exercise considerable legislative power in the House, smaller states were granted the ability to protect themselves from large-state coercion in the Senate:  as one attendee of the convention put it, "in one branch the people, ought to be represented; in the other, the States." 3 The Records of the Federal Convention of 1787 (Farrand ed. 1911), at 462 (William Samuel Johnson).

After each decennial census, Congress determines how the 435 House seats – a total defined in the 1911 Apportionment Act – shall be divvied among the 50 states.  Apportionment follows a formula known as the "method of equal proportions," which was initially adopted upon the recommendation of a committee of the National Academy of Sciences pursuant to the 1941 Apportionment Act. 2 U.S.C. § 2a(a).  The committee selected the method of equal proportions

2

because it minimized the percentage difference in population between districts, and because, of the five methods the committee reviewed, the method of equal proportions most evenly balanced the interests of less populous states and more populous states – the core concern addressed by the Great Compromise. *See also U.S. Dept. Comm. v. Montana*, 503 U.S. 442, 447-456 (1992) (reviewing development of apportionment process). The results of each decennial census generate a priority order based on state population for the 385 seats not assigned by Article I's one-representative-per-state mandate (*i.e.*, the 51st seat is assigned to the most populous state, California, and so on). As applied using the results of latest census (2010), the smallest single-district state is Wyoming, with a population of 563,626. The population per district is higher in every other state except for Rhode Island; the highest population per district belongs to Montana, which has a population of 989,415. (AC at 9-10.)

Constitutional design and practical considerations, including population growth and voter relocation between censuses, cause House districts to vary in size between states. Article I places two conditions on House apportionment: no district may have fewer than 30,000 persons, and each state shall have at least one representative. U.S. Const. Art. I, § 2. Courts and states also understand that district boundaries, drawn by state legislatures, may not cross state lines. *See Montana*, 503 U.S. at 448. While the Supreme Court has recognized that intrastate districting plans that place the population of a particular district "grossly out of balance" with other districts *in the same state* may be subject to constitutional challenge, *see Wesberry v. Sanders*, 376 U.S. 1, 3 (1964), no federal court has ever intervened to equalize the population of districts *in different states*.

Nonetheless, Plaintiffs claim that the varying sizes of congressional districts across states infringe the constitutional rights of persons in purportedly "underrepresented" states, meaning

states where individuals share their House representative with more than 563,625 other persons. EVA, a nonprofit, nonpartisan corporation with a mission of promoting voter education and participation in the democratic process, brings this suit challenging the method of equal proportions on the grounds that "by causing significant unequal representation at the House and diluting vote value in electing representatives for over 95% of Americans due to state residence . . . the Apportionment Formulas have discriminated against some states while favoring other states." (*Id.* at 15-16.) Liu resides in one such underrepresented state: New York. (*Id.* at 1.)

To remedy the variance in representation afforded to voters in different states, Plaintiffs seek a declaratory judgment that the 1911, 1929, and 1941 Apportionment Acts are unconstitutional. Plaintiffs urge the Defendants to enact an alternative apportionment formula that would "increase the number of House Representatives to 542, among with 497 regular members have 1 vote each, and 45 special members hav[ing a] vote of 1.1 to 1.9." (*Id.* at 26-27.) According to the Complaint, that subset of representatives assigned weighted votes, coupled with new House district boundaries in every state, would reduce population variance to less than 5% between districts. (*Id.*)

## LEGAL STANDARD

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (internal citations and quotation marks omitted). To survive a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Plaintiffs must carry their burden to prove that it exists. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Unlike other factual allegations, "jurisdiction must be shown affirmatively, and

that showing is not made by drawing from the pleadings inferences favorable to the party

asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

## DISCUSSION

I.    **Defendants' Motion to Dismiss is Granted.**

A.    **Plaintiffs Lack Standing to Bring This Suit.**

"The irreducible constitutional minimum" necessary to establish subject matter

jurisdiction is standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs

must satisfy three requirements to establish standing under Article III:  First, "plaintiff must have

suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical," *id.* (internal citations

omitted); second, plaintiff must show a "causal connection between the injury and the conduct

complained of" *id.*; finally, "it must be likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision," *id.*

In addition, standing analysis must account for certain "prudential" requirements that the

Supreme Court has developed "on its own accord and applied in a more discretionary fashion as

rules of judicial 'self-restraint' further to protect, to the extent necessary under the

circumstances, the purpose of Article III." *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106

(2d Cir.1992). "Pursuant to the doctrine of prudential standing, a court must ask whether a

plaintiff's claim rests on the legal rights of a third party, asserts only a generalized grievance, or

asserts a claim that falls outside the zone of interests protected by the legal provision

invoked." *Center for Reproductive Law and Policy v. Bush,* 304 F.3d 183, 196 (2d Cir.2002).

The Complaint fails to establish Plaintiffs' standing to bring this suit.

1.    **Plaintiffs fail to identify any "injury in fact" to a legally protected interest.**

Plaintiffs argue that Liu, a citizen of an underrepresented state, is injured in fact because his vote counts less than the votes of persons who reside in Wyoming and Rhode Island. Like other New Yorkers, I sympathize with Liu – our House representatives stand for 717,707 of us rather than a mere 563,626 Wyomingites. (*See* AC at 10.) But his is not the sort of "injury in fact" that confers standing to bring suit challenging the Apportionment Act.

No provision of the federal Constitution or the United States Code recognizes the "rights [of each citizen] to equal representation at the House and equal vote in any election [sic]" invoked in the complaint. (*Id.* at 22.) To the contrary: In *Wesberry*, the Supreme Court admitted that "it may not be possible to draw congressional districts with mathematical precision," *i.e.*, it may not be possible to afford each vote equal weight across districts – even districts in the same state. *Wesberry*, 376 U.S. at 18. Three decades later, addressing Montana's loss of a House seat due to the outcome of the 1990 census, the high court further articulated that the method of equal proportions reflects "the fact that it is impossible for all States to have districts of the same size." *Montana*, 503 U.S. at 453. Yet the Court held that there is "no constitutional obstacle preventing Congress from adopting" the method of equal proportions. *Id.* at 465.

Those decisions put the lie to Plaintiffs' claim that population differences across House districts constitutes an injury to Liu's *legally protected interest*. And only an injury to a legally protected interest confers standing.

In addition, EVA has no protectable interest at all. To sue on its own behalf, EVA must "meet the same standing test that applies to individuals." *N.Y. Civil Liberties Union v. N.Y. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). It cannot: EVA does not vote and is not

entitled to any representation, because the right to vote is "a *citizen's* right to vote." *Reynolds v.*
*Sims*, 377 U.S. 533, 567 (1964). And in order to bring claims on behalf of its members under the
"associational standing" doctrine, an organizational plaintiff such as EVA must identify, by
name, at least one member with standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99
(2009). Because it has not done so, EVA lacks associational standing as well.

Since Plaintiffs do not have any legally cognizable interest to protect, there is no need to
go further. But even if Congress were required to apportion districts so that each one contained
an equal number of persons, Defendants' alleged failure to do so would not create the "distinct
and palpable injury" to Plaintiffs necessary to confer standing. *Bluebird Partners, L.P. v. First*
*Fidelity Bank, N.A. N.J.*, 85 F.3d 970, 973 (2d Cir. 1996) (quoting *Warth v. Seldin*, 422 U.S. 490,
501 (1975)). Alleged injuries that are "share[d] with the general voting population" do not
suffice to show a concrete and particularized harm. *Collins v. Merrill*, No. 16-cv-9375, 2016
WL 7176651, at *2 (S.D.N.Y. Dec. 7, 2016). For example, in *Cohen v. Obama*, No. 08-cv-2150,
2008 WL 5191864 (D.D.C. Dec. 11, 2008) *aff'd*, 332 F. App'x 640 (D.C. Cir. 2009), the district
court dismissed a voter's challenge to the president-elect's eligibility to take the oath of office on
the grounds that "plaintiff's stake is no greater and his status no more differentiated than that of
millions of other voters." *Id.* at *1. And, in *Clemons v. Department of Commerce*, 562 U.S.
1105 (2010), the Supreme Court summarily vacated a challenge to the 435-seat cap on House
seats for want of subject matter jurisdiction; as here, the *Clemons* plaintiffs sought to create
"substantially more districts in order to reduce the population discrepancies [between districts]."
*Clemons v. U.S. Dept. of Comm.*, 710 F. Supp. 2d 570, 571-2 (N.D. Miss. 2010).

Plaintiff Liu knows firsthand that courts routinely reject claims based on generalized
voter standing. Just two years ago, he brought an action against Leaders Pelosi, McConnell, and

Schumer, as well as then-Speaker Paul Ryan, challenging the constitutionality of the Electoral

College, claiming that "his vote, cast in New York during the 2016 presidential election,

received less weight than votes cast in less populous states." *Liu v. Ryan*, 724 Fed. Appx. 92, 93

(2d Cir. 2018), *cert. denied*, 136 S.Ct. 600 (2018). There, as here, Liu complained that

"representation for less populous states remains unfair." (AC at 24.) The Second Circuit

affirmed the lower court's dismissal of the Electoral College challenge, noting that Liu's alleged

injury did not establish constitutional standing because it "is widely shared by the vast majority

of Americans." *Id.* at 93. So too here.

The Third Circuit has rejected the exact underrepresentation claim Plaintiffs bring in this

case. In *Lavergne v. Bryson*, 497 Fed. App'x 219 (3d Cir. 2012), plaintiff alleged "that the

method of congressional apportionment under 2 U.S.C. § 2a is unconstitutional" and "sought a

declaratory judgment and an injunction ordering the leaders of Congress to enact an

apportionment plan . . . [that] would expand the House of Representatives . . . ." *Id.* at 220.

The circuit court held that "an unconstitutionally low number of representatives" was a type of

injury "'which necessarily damages' all United States voters 'equally,'" and thus could not give

rise to standing. *Id.* at 221 (quoting *Raines v. Byrd*, 521 U.S. 811, 821 (1997)).

Plaintiffs do not bother to argue that they suffered an individualized injury. Instead they

question the soundness of that requirement:

> If a citizen's complaint must be based on an individualized injury,
> it means an existing law applies only to this citizen. However, laws
> are supposed to apply to all people. There should be no law
> targeted to one particular individual; or if there is, then such law by
> definition is either discriminative or giving unfair advantage, hence
> unconstitutional in either case.

(Pl.'s Opp'n at 12.)

But, none of the cases cited by Plaintiffs to support these sweeping assertions excuses the "concrete and particularized" injury requirement, because each involved a violation of a protected property or statutory right.  Plaintiffs in *U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669 (1973) alleged a "specific and perceptible harm" arising from increased pollution, *id.* at 689; likewise for the Plaintiffs in *Covington v. Jefferson County*, 358 F.3d 626 (9th Cir. 2004), whose property was exposed to potential contamination as the result of "ozone-depleting substances," *id.* at 641, and for the commonwealth of Massachusetts in *Massachusetts v. EPA*, 549 U.S. 497 (2007), in which the state alleged a particularized injury to its property  "in its capacity as a landowner" posed by rising sea levels, *id.* at 522.  And the Supreme Court in *FEC v. Akins*, 524 U.S. 11 (1998) recognized that an "inability to obtain information . . . which must be publicly disclosed pursuant to a statute" qualifies as an injury in fact.  *Id.* at 21.

Plaintiffs' alleged injuries here are neither individualized nor particular.  Plaintiffs claim that every person outside of Wyoming and Rhode Island is denied the maximum representation conceivable under the Plaintiffs' alternate apportionment method.  Plaintiffs may not satisfy the injury-in-fact requirement with a newly-imagined harm – underrepresentation relative to residents of Wyoming and Rhode Island – to a right never before recognized in federal courts – "equal vote in any election."  (AC at 22.)

## 2.    Plaintiffs fail to establish a causal nexus between their injuries and the Defendants' conduct.

Plaintiffs claim that their persons-per-district statistics demonstrate a causal nexus their underrepresentation injury "from the existing reapportionment laws which was [sic] enacted by the 71st Congress to the resultant unequal representation ever since." (Pl.'s Opp'n at 14.)  But there is no causal nexus between Plaintiffs' perceived injuries and the Defendants' conduct,

because the Complaint alleges no conduct of any kind by any of the Defendants.  Indeed, the Plaintiffs acknowledge that "neither the current Congress nor Defendants personally enact[ed] these existing reapportionment laws." (*Id.*)

Plaintiffs' only theory of causation – which would allow suit against Congress over any federal law on the books – is "that [Defendants] have carried on these laws [making] them as culpable as the 71st Congress."  (*Id.*)  That is wrong in so many ways.  The allegation that Congress has "carried on" the apportionment laws is at best conclusory, and at worst, contrary to the plain text of the Constitution.  The executive branch, not the Congress, must "take Care that the Laws be faithfully executed," U.S. CONST. Art. I § 3, and the apportionment laws at issue specifically direct the President to "transmit to the Congress a statement showing . . . the number of Representatives to which each State would be entitled," 2 U.S.C. § 2a(a); *see also Lavergne*, 497 Fed. App'x at 223 ("Congress acted within its authority by delegating the ministerial tasks of implementing the method of equal proportions, for redistricting, to the Department of Commerce and its employees.").  Therefore the President, not Congress, has the discretion to alter the priority order governing apportionment that is the source of Plaintiffs' purported injury.

Because Plaintiffs' alleged injuries are the result of the actions of the executive branch, the Complaint seeks redress for an injury causes by "the independent action of some third party not before the court," *Allen v. Wright*, 468 U.S. 737, 750 (1984), and thus fails to establish the causation element of standing.

### 3.    Plaintiffs fail to establish this Court's ability to redress their injuries.

Finally, Plaintiffs must "at least make a showing that there is a substantial likelihood that the relief requested will redress the injury claimed." *See E.M. v. N.Y. City Dept. of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (internal quotation marks and citations omitted).  Plaintiffs say that a declaratory judgment from this Court finding the Apportionment Acts of 1911, 1929 and

1941 to be unconstitutional will force Congress "to pass new reapportionment laws to replace the existing ones." (Pl.'s Opp'n at 24.) This Court is not convinced.

First of all, the individual Defendants, who currently serve as leaders of the Democratic and Republican parties in the House and Senate, do not possess the power to move legislation through the House and Senate on their own (to say nothing of obtaining the necessary presidential approval to pass a new apportionment bill into law). As one district court has noted, "it is pure speculation that certain legislation will be enacted" if a Court compels individual members of Congress to take up a particular agenda. *Hoffman v. Jeffords*, 175 F. Supp. 2d 49, 59 (D.D.C. 2001). Besides, any attempt by this Court to dictate new apportionment laws would violate the separation of powers, which commits "All legislative Powers" to Congress, not the judiciary. U.S. CONST. ART. I § 1; *see Liu*, 724 Fed. App'x at 93-94 (citing 1 Annals of Cong. 604 (1789) (reporting Madison's statement in first Congress that "if there is a principle in our constitution, indeed in any free constitution, more sacred than another, it is that which separates the legislative, executive, and judicial powers")).

For these reasons, it is highly unlikely that an order directing Leaders Pelosi, McCarthy, McConnell, and Schumer to enact new apportionments laws would redress the underrepresentation issues identified in the Complaint. Plaintiffs fail to satisfy the redressability element of standing.

**B.    Sovereign Immunity Bars This Suit.**

Sovereign immunity poses an independent bar to this Court's subject matter jurisdiction. "The doctrine of sovereign immunity is jurisdictional in nature . . . and therefore to prevail, the plaintiff bears the burden of establishing that [their] claims fall within an applicable waiver." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

11

Plaintiffs are suing Congress and certain of its members "on ex official basis [sic]" for their legislative activities (and inactivities) related to apportionment.  (AC at 1.)  Yet Plaintiffs ignore two well-established rules that shield Defendants' actions from jurisdiction (let alone liability).  First, "The shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities.  *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) (citing *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).  Second, the Speech and Debate Clause of Article I of the Constitution, which provides that "[t]he Senators and Representatives ... shall not be questioned in any other Place" for "any Speech or Debate in either House," U.S. CONST. Art. I, § 6, cl. 1, renders "members of Congress . . . absolutely immune" for their legislative acts, *Lynch v. U.S. Congress*, No. 3:17-cv-00704, 2017 WL 1946313, at *3 (D. Or. May 10, 2017) (citing *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 508-9 (1975)).

Even if Plaintiffs could satisfy the standing requirements to sue in this Court, their claim would fail because Congress and its members are entitled to immunity, both generally as federal employees and specifically in their legislative roles.  Plaintiffs identify no applicable waiver.

For all the reasons above, the Complaint must be dismissed for lack of subject matter jurisdiction.  Because these jurisdictional grounds suffice to decide the motion to dismiss, this Court does not address the Defendants' remaining arguments pursuant to Rules 12(b)(2) and 12(b)(6).  Plaintiffs' failure to plead subject matter jurisdiction also establishes this Court's authority to decide the motion without convening the three judge panel required to decide an apportionment case on the merits.  *See* 28 U.S.C.A. § 2284(a).  A district court may forego the three-judge requirement if, as here, it "lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts," *Shapiro v. McManus*, 136 S.Ct. 450, 455 (2015).

**II.    Plaintiffs' Motion for Leave to Amend is Denied as Futile.**

The remaining motion before this Court is Plaintiffs' Motion to Amend Complaint to Add Parties. (Dkt. No. 23.) Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires. *See* FED. R. CIV. P. 15(a)(2). The Supreme Court has, however, interpreted Rule 15 to permit such amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when that party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). A proposed amendment that fails to cure jurisdictional deficiencies is considered futile. *See, e.g., Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996). Because Plaintiffs lack standing to sue, amendment would be futile. The motion for leave is denied.

### CONCLUSION

Defendants' Motion to Dismiss is GRANTED in full, and with prejudice. Plaintiffs' Motion to Amend is DENIED.

This constitutes the written opinion and order of the Court. The Clerk of Court is respectfully requested to close the motions at Docket Numbers 21 and 23.

Dated: September 3, 2019

_____
Chief Judge

BY ECF TO ALL PARTIES