19-3054
*Liu v. Congress*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of October, two thousand twenty.

PRESENT: John M. Walker, Jr.,
Steven J. Menashi,
*Circuit Judges.*[*]

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Oct 28 2020
```

_____

Lewis Y. Liu,

      *Plaintiff-Appellant,*

v.  No. 19-3054

United States Congress; Nancy Pelosi, in her
official capacity as the Speaker of the House
of Representatives; Mitch McConnell, in his
official capacity as Senate Majority Leader;

_____

[*] Senior Circuit Judge Ralph K. Winter, originally a member of the panel, is currently unavailable, and the appeal is being adjudicated by the two available members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

CERTIFIED COPY ISSUED ON 10/28/2020

Kevin McCarthy, in his official capacity as Minority Leader of the House of Representatives; Charles Schumer, in his official capacity as Minority Leader of the Senate,

   *Defendants-Appellees*.[†]

_____

*For Plaintiff-Appellant*:    LEWIS LIU, New York, NY, pro se.

*For Defendants-Appellees:*   STEPHEN JOHN KOCHEVAR (Benjamin H. Torrance, *on the brief*) *for* Audrey Strauss, Acting U.S. Attorney for the Southern District of New York, New York, NY.

  Appeal from a judgment of the United States District Court for Southern District of New York (McMahon, C.J.).

  Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court granting Appellees' motion to dismiss is **AFFIRMED** and the case is **REMANDED** for the limited purpose of amending the judgment to dismiss Liu's complaint without prejudice.

---

[†] The Clerk of Court is respectfully directed to amend the official caption as listed above.

2

I

Appellant Lewis Y. Liu, proceeding pro se, appeals the district court's judgment dismissing his complaint against the U.S. Congress and several congressional leaders in their official capacities. Liu and Equal Vote America Corporation ("EVA")—a group led by Liu—claimed that the current congressional apportionment scheme results in underrepresentation because, while Wyomans[1] receive representation in the House of Representatives at a proportion of one representative per 563,626 persons, New Yorkers receive representation at a proportion of one representative per 717,707 persons. Liu and EVA sought a declaration that the Apportionment Acts of 1911, 1929, and 1941 are unconstitutional. They also suggested that, if the Congress fails to enact statutes implementing Liu's preferred method of apportionment, the district court should hold the Congress in contempt and declare the Senate unconstitutional. The defendants moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim. The district court granted the motion and dismissed the complaint for lack of subject matter jurisdiction, with prejudice, holding that Liu and EVA

---

[1] *See Montana v. Wyoming*, 563 U.S. 368, 389 n.* (2011) (Scalia, J., dissenting).

lacked standing and that the suit was barred by sovereign immunity and the Constitution's Speech or Debate Clause. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

For the reasons that follow, we affirm.

## II

The Supreme Court's cases "have established that the 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal citation omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff "must demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 641 n.15 (2d Cir. 2003)). To evaluate a motion to dismiss for lack of standing, we ask whether the plaintiff plausibly alleged the existence of each of the three elements. *See Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the

4

successive stages of the litigation."). We review de novo the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

We conclude that while Liu plausibly alleged an injury in fact, he failed to allege that the remaining elements of standing are satisfied.

## A

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548. We conclude that Liu plausibly alleged an injury in fact in the form of vote dilution. The Supreme Court has held that a voter alleges an injury in fact sufficient to give rise to Article III standing when he alleges that his vote has been diluted because he has been improperly placed in a legislative district the population of which is substantially greater than that of other districts. *See Baker v. Carr*, 369 U.S. 186, 206-07 (1962) (holding that the plaintiffs had standing to challenge Tennessee's apportionment of state representatives when that apportionment "effect[ed] a gross disproportion of representation to voting population"). In *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999), the Court

5

considered a challenge to the constitutionality of the Department of Commerce's proposed use of statistical sampling in the decennial census. An Indiana resident argued that he suffered an injury in fact because the Department of Commerce's use of statistical sampling would result in a substantial undercount in Indiana, such that Indiana would lose a member of its congressional delegation. Concluding that the Indiana plaintiff had standing, the Court explained:

> Appellee Hofmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because they are asserting a plain, direct and adequate interest in maintaining the effectiveness of their votes. The same distinct interest is at issue here: With one fewer Representative, Indiana residents' votes will be diluted.

*Id.* at 331-32 (internal citation, quotation marks, and alteration omitted). While this case does not concern the loss of a representative, the alleged injury of vote dilution is the same. When a state loses a representative, it must redraw its districts such that the remaining legislative districts absorb relatively equal proportions of the population of the former representative's district. *See Evenwel v. Abbott*, 136 S. Ct. 1120, 1124 (2016). A voter thereby suffers an injury because the efficacy of his or her vote is diluted when it is introduced into a larger voting pool. *See Dep't*

6

*of Commerce v. U.S. House of Representatives*, 525 U.S. at 334 ("[E]xpected intrastate vote dilution satisfies the injury-in-fact ... requirement."); *Dep't of Commerce v. Montana*, 503 U.S. 442, 445, 459 (1992) (noting that a challenge to "the standard that governs the apportionment of Representatives among the several States" is "unquestionably within our jurisdiction"); *Baker*, 369 U.S. at 208 (concluding that plaintiffs alleging "impairment of their votes by the 1901 apportionment …. have standing" because "[t]hey are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes,' not merely a claim of 'the right possessed by every citizen 'to require that the government be administered according to law'") (internal citation omitted); *Wesberry v. Sanders*, 376 U.S. 1, 8 (1964) (entertaining a claim of "vote-diluting discrimination"); *Reynolds v. Sims*, 377 U.S. 533, 568 (1964) (considering a claim that "an individual's right to vote … is in a substantial fashion diluted"); *WMCA, Inc v. Lorenzo*, 377 U.S. 633, 653 (1964) (reviewing "an apportionment scheme" that allegedly "result[s] in a significant undervaluation of the weight of the votes of certain of a State's citizens").

In this case, Liu's complaint alleges that New York and forty-seven other states—those states aside from Wyoming and Rhode Island—are unconstitutionally deprived of additional representatives that the states would

7

receive under a proper apportionment scheme. Accordingly, his complaint in part alleges that he and his fellow New Yorkers suffer vote dilution because they must vote in electoral districts with populations larger than they constitutionally should. That is the same injury alleged in *Dep't of Commerce v. U.S. House of Representatives*, which the Supreme Court said is an injury in fact under Article III. To the extent Liu alleges injury based on vote dilution suffered by residents of other states, he "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The defendants argue that Liu has failed to allege an injury in fact because the Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government ... does not state an Article III case or controversy." *Lujan*, 504 U.S. at 574. They suggest that Liu's asserted injury is an abstract, generally available grievance unsuitable for resolution in a federal court. We disagree. In this case, we are concerned with a right—the right to have one's vote count equally—that the Supreme Court has characterized as concrete, "individual[,] and personal in nature." *Reynolds*, 377 U.S. at 561. The Court has explained that, "[w]here a harm is concrete, though widely shared," that harm is cognizable under Article III. *FEC v. Akins*, 524 U.S. 11, 24 (1998). "The kind of

8

judicial language to which" the defendants refer "invariably appears in cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature—for example, harm to the 'common concern for obedience to law.'" *Id.* at 23. In such cases, it is "[t]he abstract nature of the harm"—not the number of persons who share the harm—that "deprives the case of the concrete specificity" required by the Constitution. *Id.* at 24; *see also Lujan*, 504 U.S. at 573 (rejecting the view that "the injury-in-fact requirement had been satisfied by congressional conferral upon all persons of an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law"); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974) (dismissing for lack of standing a case in which the "Respondents [sought] to have the Judicial Branch compel the Executive Branch to act in conformity with the Incompatibility Clause, an interest shared by all citizens"); *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 194 (2d Cir. 2001) (dismissing for lack of standing a voter's suit challenging the Commission's practice of "limiting participation … to candidates who have demonstrated a particular measure of popularity"). Because the Supreme Court's cases have consistently held vote dilution to be an injury in fact, we conclude that Liu plausibly alleged the first element of standing.

9

**B**

The Constitution requires that a plaintiff's alleged injury be fairly traceable to the defendant's conduct. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976) ("[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."). While the requirement that the alleged harm be fairly traceable to the defendant is not an "onerous" one, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016), a plaintiff must establish some causal relationship between the defendant's conduct and the plaintiff's injury, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) ("[T]here must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant."); *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) ("The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'") (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992)). Here, Liu has named as defendants the Congress and its leaders. We conclude that Liu has failed plausibly to allege that

there exists a sufficiently direct causal connection between the conduct of those defendants and the injury he alleges.

The Constitution provides that "Representatives ... shall be apportioned among the several States ... according to their respective Numbers." U.S. Const. art. I, § 2, cl. 3. The "respective Number[]" of persons living in each state is determined in the decennial census, the responsibility for which the Congress has committed to the Secretary of Commerce. 13 U.S.C. § 141(a). After the Secretary submits the results of the census to the President, the President must issue to the Congress "a statement showing the whole number of persons in each State ... as ascertained under the ... decennial census of the population, and the number of Representatives to which each State would be entitled under ... the method of equal proportions." 2 U.S.C. § 2a(a). After the President has issued that statement, the Clerk of the House of Representatives is "to send to the executive of each State a certificate of the number of Representatives to which such state is entitled," *id.* at § 2a(b), at which point the states may exercise their authority to draw districts, U.S. Const. art. I, § 4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature

11

thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.").

Liu has not sued any of the parties responsible for conducting the census, preparing the statement of its results, or conducting redistricting. Instead, he has sued the Congress and its leaders, alleging only they have failed to pass new statutes implementing Liu's preferred method of apportionment. Because it is the actions of those actors responsible for the census and for redistricting—not those of the Congress or its current leaders—that have allegedly injured him, Liu has failed to demonstrate that his injury is fairly traceable to the defendants. *See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) ("The 'traceability' or causation element 'requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm.'"); *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) ("Causation, or traceability, examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff .... Causation may thus be said to focus on whether a particular party is appropriate.") (internal quotation marks and citations omitted); *see also Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 801 (D.C.

12

Cir. 1987) ("[C]ausation ... is something of a term of art, taking into account not merely an estimate of effects but also considerations related to the constitutional separation of powers as that concept defines the proper role of courts in the American governmental structure.").

Accordingly, we conclude that Liu has failed plausibly to allege the second element of standing.

## C

To satisfy the redressability requirement, a plaintiff must make "a showing that there is a 'substantial likelihood that the relief requested will redress the injury claimed.'" *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (quoting *Duke Power Co v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 75 n.20 (1978)); *Steel Co.*, 523 U.S. at 107 ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). In his complaint, Liu seeks two forms of relief. First, he asks for a declaration that the Apportionment Acts of 1911, 1929, and 1941 are unconstitutional. Second, he requests that the district court should hold the Congress in contempt and declare the Senate unconstitutional unless the Congress enacts a statute implementing his preferred method of apportionment. Because

13

neither proposal would redress Liu's alleged injury, he has failed plausibly to allege the third element of standing.

First, federal courts lack the power to compel the Congress to exercise its legislative powers. The Constitution commits the federal legislative power to the Congress. As Justice Scalia observed in his concurrence in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), "[u]nless the other branches are to be entirely subordinated to the Judiciary," courts may not "direct ... the Congress to perform particular legislative duties." *Id.* at 829 (Scalia, J., concurring). Because passing a statute is a quintessentially legislative power, the federal courts may not compel the Congress to exercise it.

Second, federal courts lack authority to declare the Senate unconstitutional. The Framers and the ratifiers of the Constitution decided that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which *shall consist of a Senate* and House of Representatives." U.S. Const. art. I, § 1. (emphasis added). They also determined that the Senate "*shall* be composed of two Senators from each State." *Id*. § 3, cl. 1 (emphasis added). Because the Constitution expressly provides for the Senate, the federal courts cannot declare it unconstitutional. *Cf. Bucklew v. Precythe*, 139 S. Ct. 1112, 1122-23 (2019) (noting that

14

the "judiciary bears no license to" declare the death penalty unconstitutional because the "Fifth Amendment … expressly contemplates that a defendant may be tried for a 'capital' crime and 'deprived of life' as a penalty"). Moreover, a declaration of the Senate's unconstitutionality, even if it were within the power of the federal courts, would not remedy any injury in fact. Liu does not allege that he is injured by the way in which Senate seats are apportioned. Because a declaration that the Senate is unconstitutional would not remedy any alleged inequalities in the apportionment of representatives, such a declaration cannot "bootstrap [Liu] into federal court." *Steel Co.*, 523 U.S. at 107. Finally, a declaration that the Apportionments Acts of 1911, 1929, and 1941 are unconstitutional would not remedy Liu's asserted injury because it would not change the apportionment of representatives. Rather, it would leave the current apportionment in place until such time as the Congress enacts a new apportionment statute. Because the possibility that Congress would enact such a statute—and that the President would sign it—is speculative, we conclude that Liu failed plausibly to allege the third element of standing.

15

For these reasons, we conclude that the district court lacked jurisdiction because Liu failed plausibly to allege the irreducible constitutional minimum of standing.

## III

We have considered all Liu's remaining arguments, which are without merit. Accordingly, we **AFFIRM** the judgment of the district court but **REMAND** for entry of an amended judgment of dismissal without prejudice. "[W]hen a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives federal courts of the power to dismiss the case with prejudice.' As a result, where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*." *Katz v. Donna Karan Company*, 872 F.3d 114, 121 (2d Cir. 2017) (internal citation and alteration omitted) (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

16